# Illinois Official Reports

## Appellate Court

*In re Marriage of Harnack*, 2014 IL App (1st) 121424

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF PAMELA HARNACK, Petitioner-Appellee, and STEVE FANADY, Respondent-Appellant (Jerome Israelov, CBOE Holdings, Inc., and Computershare Shareowner Services LLC, Plaintiffs; Steve Fanady, Alpha Industries LLC, Pamela Harnack, Jerome Israelov, Michelle Marme, Fanmare and Grund & Leavitt, P.C., Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1424 |
| Filed | November 21, 2014 |
| Rehearing denied | December 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the matter of a relatively complex marital dissolution appeal complicated by respondent husband's failure to participate in the proceedings in a meaningful manner and the interjection of a business associate's claim against respondent arising from a venture into options trading, the appellate court affirmed the trial court's denial of respondent's motion to set aside the judgment pursuant to section 2-1301(e) of the Code of Civil Procedure and his motion to vacate the judgment under section 2-1401(e) of the Code, since respondent failed to show that the judgment imposed a penalty of hardship on him and respondent's own actions were the sole cause of any errors or unfairness he alleged existed in the trial court's judgment; however, due to the disagreement over the source of certain stock the trial court ordered placed in escrow pending the resolution of the action filed by respondent's business associate, the cause was remanded for clarification of which stock and how much of the stock would be transferred to fund the escrow. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-D-02844, 11-CH-7166, 11-CH-35656; the Hon. David E. Haracz, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed and cause remanded with directions. |
| Counsel on Appeal | Schmidt & Barbrow, P.C., of Wheaton (Janella L. Barbrow and Jeffrey M. Jacobson, of counsel), for appellant.<br><br>Allan W. Masters, Ltd. (Allan W. Masters, of counsel), and Hunt & Associates, P.C. (Keith L. Hunt, of counsel), both of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE PALMER delivered the judgment of the court, with opinion.<br>Justices McBride and Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1 Petitioner Pamela Harnack filed a petition for dissolution of her marriage to respondent Steve Fanady. Fanady stopped participating in the proceedings and was found to be in default by the court. While the dissolution action was pending, Jerome Israelov filed an action in chancery court against Fanady and Alpha Industries LLC (Alpha), a firm owned by Fanady. Israelov claimed that he and Fanady, through Alpha, had entered into a partnership agreement to purchase a membership (seat) on the Chicago Board of Options Exchange (CBOE) through a partnership named ISRFAN. The seat had subsequently been exchanged for 80,000 shares of CBOE Holdings, Inc., stock, Fanady/Alpha had withdrawn its 50% interest in the partnership (40,000 shares) and Israelov sought distribution by Alpha of his 50% interest in the seat (40,000 shares). The court consolidated Israelov's action with the dissolution action.

¶ 2 The court entered a default judgment dissolving the marriage and apportioning the parties' assets. Finding all shares of CBOE Holdings, Inc., stock held by Fanady, Alpha or any of Fanady's other enterprises were marital property, the court awarded Harnack 140,000 shares of the 280,000 total shares owned by Fanady as her marital portion. Recognizing that Israelov's claim to 40,000 shares remained pending, the court ordered CBOE Holdings, Inc. (CBOE Holdings), and Computershare Shareowner Services LLC (Computershare), the entities holding the shares, to transfer 120,000 shares to Harnack and to transfer 40,000 shares into escrow pending the outcome of the Israelov action. CBOE Holdings and Computershare filed an interpleader action informing the court that they could not comply with the judgment for dissolution of marriage because Fanady had already withdrawn

120,000 shares and only 120,000 shares remained in the accounts. They requested a judicial determination of who owned the remaining 120,000 shares.[1]

¶ 3　Eight months after entry of the judgment of dissolution, Fanady moved to set aside the judgment pursuant to sections 2-1301(e) and 2-1401(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e), 2-1401(a) (West 2012)). The court denied both the section 2-1301(e) motion and section 2-1401(a) petition. Fanady appeals, arguing (1) the court erred in finding section 2-1301(e) did not apply; and (2) the court erred in denying his section 2-1401(a) petition. In a motion taken with the case, he also argues that portions of Harnack's brief on appeal should be stricken. We deny Fanady's motion to strike Harnack's brief and affirm the trial court's order denying the section 2-1301 motion and section 2-1401 petition to set aside the judgment for dissolution of marriage. However, we remand with directions.

¶ 4　　　　　　　　　　　　　　　　BACKGROUND

¶ 5　Harnack and Fanady married in October 2003. The parties had no children together. In March 2008, Harnack filed for dissolution of marriage. Fanady initially participated in the dissolution proceedings and was represented by various counsel. At some point in 2010, Grund & Leavitt, P.C. (Grund & Leavitt), one of the law firms that had represented Fanady in the dissolution action, filed a petition against him for unpaid legal fees. On September 17, 2010, the court granted Fanady's latest counsel leave to withdraw and allowed Fanady 21 days in which to retain new counsel or file a *pro se* appearance. Fanady did neither. On November 1, 2010, on Harnack's motion, the court found Fanady in default "based on his failure to file an appearance" within 21 days and set the case for a hearing. In December 2010, Grund & Leavitt obtained a default judgment against Fanady for its attorney fees.

¶ 6　In February 2011, Harnack moved for a temporary restraining order (TRO) and preliminary injunction seeking to bar Fanady or any of his agents or enterprises from transferring any assets, especially any CBOE Holdings shares. She asserted Fanady had held 280,000 shares of CBOE Holdings stock, he had transferred 80,000 of the shares to a broker for sale as of January 4, 2011, and there remained only 80,000 unrestricted shares that could be sold immediately and 120,000 shares restricted until June 2011, or a total of 200,000 shares. She sought to prevent him from transferring any more shares.

¶ 7　As shown by the record, Harnack's information regarding the number of shares held by Fanady was outdated. Fanady acquired four CBOE seats during the marriage. In November 2009, while the dissolution proceeding was pending and without Harnack's knowledge, Fanady sold one seat for $2.775 million and transferred the funds to a bank account in Switzerland. On June 14, 2010, CBOE Holdings went public and exchanged each CBOE seat for 80,000 shares of CBOE Holdings stock, all restricted. On that date, Fanady held only three of his original four seats: two seats in an account under the name of Alpha and one seat

---

[1]The interpleader action was filed in the names of CBOE Holdings, Inc., and "Mellon Investor Services LLC d/b/a BNY Mellon Shareowner Services." When Mellon Investor Services LLC, d/b/a BNY Mellon Shareowner Services, subsequently changed its name to Computershare Shareowner Services LLC, the court granted it permission to amend the caption in the interpleader action to reflect the new name. We will refer to this entity as Computershare.

in an account under the name of Fanmare, a partnership he had entered into with Michelle Marme. On June 14, 2010, after the three seats were exchanged for shares, Fanady held a total of 240,000 shares as follows:

| Alpha: | 80,000 A-1 restricted shares |
| Alpha: | 80,000 A-2 restricted shares |
| Fanmare: | 40,000 A-1 restricted shares |
| Fanmare: | 40,000 A-2 restricted shares |

If he had not already sold the fourth seat, he would have received a total of 320,000 shares.

¶ 8     The A-1 shares became unrestricted and freely transferable on December 15, 2010. As Harnack asserted in her motion for a TRO and injunctive relief, Fanady transferred 80,000 shares, the unrestricted A-1 shares, out of the Alpha account on January 4, 2011. Harnack was unaware that, on February 8, 2011, the day before she filed her request for TRO, Fanady had also transferred the 40,000 unrestricted A-1 shares from the Fanmare account. As a result, by the time Harnack filed her motion, all that remained of the original 240,000 shares was 80,000 shares of restricted A-2 stock in the Alpha account and 40,000 shares of restricted A-2 stock in the Fanmare account, for a total of 120,000 shares.

¶ 9     In late February 2011, Israelov filed an action in chancery court against Fanady and Alpha alleging breach of contract, breach of fiduciary duty and conversion under a partnership agreement he had with Fanady through Alpha, an entity Fanady purported to manage but the existence of which Israelov was later unable to confirm. Israelov alleged that on January 26, 2010, he and Fanady, "purportedly through Alpha," entered into a partnership agreement establishing the ISRFAN partnership in order to jointly purchase a seat on the CBOE. Israelov paid $1,312,500 to CBOE Holdings on January 27, 2010, for his 50% interest in the partnership's seat. Fanady prepared the application to purchase the seat. The application lists ISRFAN as the "organization" purchasing the seat and Fanady, Pantheon, LLC, one of Fanady's enterprises, and a trust as owners of the seat. Fanady did not list Israelov as an owner. On June 14, 2010, when CBOE Holdings converted to a public company, it issued 80,000 shares of its common stock in exchange for the seat. The shares were subject to a "lock up," preventing the owners from trading them for a six-month period. Under the terms of the ISRFAN agreement, within five days of the shares being released, Alpha/Fanady was to deliver the released shares to the partnership in order that each partner could receive his 50% portion, or 20,000 shares. On December 15, 2010, 40,000 of the 80,000 shares were released from lock-up. Israelov claimed that Fanady/Alpha took possession of the 40,000 released shares but, despite numerous requests by him, refused to distribute to Israelov the 20,000 shares he was due from the initial distribution. The remaining ISRFAN 40,000 shares held in the Alpha account were scheduled to be released for transfer in June 2011. Concerned that Fanady/Alpha would also take these shares, Israelov sought enforcement of his partnership agreement with Alpha/Fanady and to enjoin Fanady and/or Alpha from appropriating the remaining shares scheduled to be released on June 13, 2011.

¶ 10     In May 2011, on Harnack's motion, the court consolidated Israelov's chancery action with the dissolution case pending in the domestic relations division. It granted the motions for TRO and subsequently, on motions by Harnack, Israelov and Grund & Leavitt, issued TROs, preliminary injunctions and ultimately permanent injunctions barring Fanady, his

agents, enterprises or anyone acting on his behalf from transferring any assets, including any shares or related dividends held in the name of Fanady or any of his enterprises.

¶ 11 In June 2011, Israelov and ISRFAN entered into a settlement agreement with Alpha pursuant to which Alpha agreed that it had received its *pro rata* 40,000 shares (half of the total 80,000 shares exchanged for the ISRFAN seat). Alpha agreed that 40,000 shares remained due and owing to Israelov and that it would place 40,000 shares in an account in the name of ISRFAN when the A-2 shares became unrestricted on June 13, 2011. Once the transfer was made, Israelov was to dismiss his suit. Fanady allegedly having resigned as manager of Alpha in March 2011, Alpha's new manager executed the agreement on behalf of Alpha.

¶ 12 Israelov moved for limited dissolution and/or modification of the injunctive orders in order to allow "the transfer of the certain undisputed non-marital assets" to him from Alpha pursuant to the settlement agreement, specifically the 40,000 shares he was due as his 50% interest in the former CBOE seat 300124. Grund & Leavitt moved to deny the motion. That motion remains undecided.

¶ 13 The court held a prove-up hearing on the dissolution action on August 3, 2011, during which it heard testimony from Harnack. The record shows Fanady was served with notice of the hearing.[2] He did not appear at the hearing, although counsel for Harnack informed the court that he had seen Fanady in the courtroom a half hour before the hearing. The court entered the judgment for dissolution of marriage on the same day.

¶ 14 In the judgment for dissolution of marriage, the court found that Fanady was worth approximately $7.3 million as of March 2010 while Harnack had minimal income, was unable to support herself and had recently been diagnosed with an autoimmune disorder. The court ordered Fanady to pay Harnack $6,175 in maintenance per month for 48 months following entry of the judgment. The court noted that it had already ordered payment of maintenance in September 2010 and that Fanady had failed to comply with the order and was $67,925 in arrears for 11 months of maintenance payments by July 2011. The court ordered that the total amount due and owing for 59 months of past and future maintenance was $364,325. It ordered that the sum should be paid to Harnack as a "lump sum" in lieu of periodic payments, "said amount to be paid from the ultimate amount of distribution as herein below indicated."

¶ 15 The court found that, during the marriage, the parties had acquired assorted marital property, including "the equivalent of 320,000 *** shares of [CBOE Holdings] stock (Steve Fanady being 100% owner of at least 280,000)."[3] The court found that the CBOE Holdings

---

[2]In fact, the record shows that Fanady was served with notice of all of Harnack's and Israelov's assorted motions and petitions and any orders thereon.

[3]The unrebutted evidence before the court was that Fanady had acquired four CBOE seats during the marriage and, when CBOE Holdings went public in June 2010, each of the seats would have been exchanged for 80,000 shares. Therefore, the parties had acquired "the equivalent of" 320,000 shares of CBOE Holdings stock (4 @ 80,000 shares) during the marriage.

However, only three of the four seats were ultimately exchanged for shares because in 2009, without Harnack's knowledge and while the dissolution action was pending, Fanady sold one seat for $2.775 million and transferred the money to a Swiss bank account. Thus, only three seats were exchanged, for a total of 240,000 shares. By the time the judgment for dissolution of marriage was

- 5 -

stock owned in the names of Fanady, Alpha, Fanmare, ISRFAN and Pantheon, LLC, another Fanady enterprise, was property acquired during the marriage and awarded Harnack 140,000 shares of the stock. It initially ordered CBOE Holdings and Computershare to transfer 140,000 shares of CBOE Holdings stock to Harnack within 10 days of the judgment. However, the typed "140,000" is struck through and "120,000" is handwritten above the original number, thus resulting in an order requiring CBOE Holdings and Computershare to transfer 120,000 shares to Harnack within 10 days. Also handwritten at the end of the same provision is the following: "Forty thousand shares currently registered to Alpha LLC and so held shall be placed in an escrow account pending resolution of Israelov's claim." The court awarded Fanady "the balance of the shares of CBOE stocks (not awarded to [Harnack])."

¶ 16 In addition to distributing the shares, awarding maintenance and allocating the parties' numerous other assets, the court awarded Harnack the marital home, which was encumbered by a $690,460 lien imposed by the Internal Revenue Service (IRS) for Fanady's unpaid personal income taxes. The court noted that the house was held in a trust, the ATG Trust, for Alpha's benefit. It ordered Fanady to execute a deed and transfer all right and title to the property from the trust to Harnack within 14 days of the judgment. If Fanady failed to do so, the court or another court acting in its stead would "execute a Judge's deed transferring all said rights, title and interest therein" to Harnack.[4] In a separate provision, the court "requested" the IRS to release any liens on the property.

¶ 17 The court also awarded Harnack $220,000 for attorney fees to be paid to her past and then-current counsel, including an award of $50,000 to her then-current counsel for "prospective fees and the enforcement of the judgment."[5] The court stated that "said fees are awarded to *** Harnack for obstructive actions taken by *** Fanady, *i.e.*, *failing to comply with this court's orders, being previously held in contempt, failure to participate in the process and generating false pleadings as indicated in other documents currently pending in this matter.*" (Emphasis in original.) It ordered that the attorney fees "should be reimbursed to [Harnack] from the proceeds of the sale of the 140,000 120,000 shares *** awarded to her pursuant to this Judgment." At the end of the judgment for dissolution of marriage, the court added the handwritten notation that "any prior injunction entered in the matter shall survive this judgment and remain in full force and effect except for the purpose of compliance herewith."

¶ 18 After the judgment for dissolution of marriage was entered, Harnack learned that Fanady had sold one of the four CBOE seats acquired during the marriage for $2.775 million in November 2009, 20 months after Harnack filed for dissolution and 6 months before the CBOE went public, and had transferred the funds to a bank account in Switzerland.

¶ 19 On October 13, 2011, CBOE Holdings and Computershare filed an interpleader action against Harnack, Fanady, Israelov, Marme, Alpha, Fanmare and Grund & Leavitt asserting

---

entered, Fanady had already withdrawn 120,000 of those shares from the Alpha and Fanmare accounts, leaving only 120,000 shares in the accounts.

[4]Fanady had purchased the house in October 2006, during the marriage, and placed the title in a trust managed by ATG Company of which he was the sole beneficial owner. Execution of the judge's deed was subsequently stayed.

[5]The order states that it awards $200,000 to Harnack for attorney fees but adding the individual amounts together, the total is actually $220,000.

that, although the court had ordered them to transfer a total of 160,000 shares within 10 days of the judgment (40,000 transferred to escrow and 120,000 transferred to Harnack), they would be unable to comply with the judgment for dissolution of marriage because the Alpha and Fanmare accounts only held a total of 120,000 shares. They requested a determination regarding which of the seven defendants were the lawful owners of the 80,000 shares remaining in the Alpha account and 40,000 shares remaining in the Fanmare accounts and to whom it should pay the related past and future dividends. Based on exhibits attached to the interpleader, the following chart illustrates how, although Fanady held three seats worth 240,000 shares in the Alpha and Fanmare accounts during the marriage, there came to be only 120,000 shares in the Alpha and Fanmare accounts by the time the judgment for dissolution of marriage was entered:

| Account Holdings Initial | 6/14/10 80,000 Shares exchanged per seat (Shares restricted for 6 months) | 12/15/10 A-1 Shares become unrestricted | Account Holdings Current (not including dividends) |
|---|---|---|---|
| **Alpha**: 2 seats<br><br>(one held solely by Fanady and the other either held solely by Fanady or held by ISRFAN, a 50/50 partnership between Fanady & Israelov) | 80,000 A-1 shares<br><br>80,000 A-2 shares | 1/4/11<br>Fanady orders the 80,000 A-1 shares transferred out; whereabouts unknown | 80,000 A-2 shares<br><br>(Israelov claims 40,000 shares) |
| **Fanmare**: 1 seat<br><br>(Either held solely by Fanady or by Fanmare, a 50/50 partnership between Fanady and Marme) | 40,000 A-1 shares<br><br>40,000 A-2 shares | 2/8/11<br>Fanady orders the 40,000 A-1 shares transferred out; whereabouts unknown | 40,000 A-2 shares<br><br>(Fanmare claims 40,000 shares) |

The court consolidated the interpleader action filed by CBOE Holdings and Computershare with the already consolidated dissolution and Israelov actions in January 2012.

¶ 20    On December 19, 2011, the court granted counsel for Fanady leave to appear. On January 5, 2012, Fanady moved for change of judge and venue under section 2-1001.5 of the Code (735 ILCS 5/2-1001.5 (West 2010)), asserting assorted claims of impropriety against the judge presiding over the consolidated dissolution and Israelov actions as well as against Harnack's counsel. In the face of Harnack's motion to strike, Fanady's counsel filed his appearance on January 13, 2012. The court denied the motion to transfer venue.

¶ 21    On April 3, 2012, nine months after the judgment for dissolution of marriage had been granted, Fanady filed a four-page "motion to set aside" the judgment for dissolution of marriage pursuant to section 2-1301 or "in the alternative" under section 2-1401. He set forth a disparate litany of unsupported assertions and legal conclusions, including the assertion that he was under duress after his counsel withdrew on September 17, 2010, and that he stopped participating in the proceedings because, during a September 2010 pretrial conference before a different judge, that judge told him there would not be a trial on the merits and he "needs to just write a seven figure check" to Harnack. He claimed that the judgment was unconscionable, not final and failed to address the elements of section 504 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504 (West 2012)). He further asserted he was denied due process, the court went beyond its jurisdiction by ordering the IRS to release liens on the "marital" home and he had acquired the home in October 2006 "in exchange for" his nonmarital property or property he acquired by gift, legacy or descent. Fanady attached an affidavit in support of his motion but the affidavit consisted of only three sentences, stating only that he was the respondent, over 21 years of age and the facts stated in the petition were incorporated into the affidavit by reference.

¶ 22    On April 12, 2012, the court denied a motion to transfer venue filed by Alpha. On May 11, 2012, the court entered an order denying Fanady's motion to vacate the judgment for dissolution of marriage. As stated on the record, the court found section 2-1301 did not apply and the section 2-1401 petition failed for failure to show due diligence.

¶ 23    As noted above, from September 21, 2010, when the court had granted Fanady's counsel leave to withdraw and Fanady 21 days in which to retain new counsel or file a *pro se* appearance, until January 13, 2012, when Fanady's new counsel filed an appearance, Fanady did not participate in the dissolution proceedings. He had not, however, been idle during those 15 months.

¶ 24    As shown by Harnack's February 2011 petition to hold Fanady in indirect civil contempt "for his actions relative to the fabrication of a judgment for dissolution of marriage," Fanady had obtained a religious divorce from Harnack in the Greek orthodox church by presenting his priest with a circuit court of Cook County "judgment for dissolution of marriage" document dated July 21, 2010. Harnack asserted she had no knowledge of the document. The "judgment" purported to dissolve Fanady's marriage to Harnack and contained the signature stamp of Cook County Judge Nancy Katz and the alleged signatures of Fanady's former counsel David Ainley and then-counsel John D'Arco. Evidence attached to Harnack's petition shows that no such judgment for dissolution of marriage had been filed with the clerk of the circuit court of Cook County, both Ainley and D'Arco denied participation in the creation of the judgment and knew nothing about it, the church issued the ecclesiastical divorce to Fanady on August 2, 2010, and Fanady was to marry his girlfriend on November 28, 2010.[6] The court granted the petition and ordered Fanady to turn over his American and Greek passports. He did not comply with the order.

¶ 25    Meanwhile, Fanady had also obtained an *ex parte* "final judgment of dissolution of marriage with no property or dependent or minor children (uncontested)" in Clay County, Florida, on March 24, 2011. This "uncontested" Florida judgment shows that Fanady

_____

[6]After the instant appeal was filed, Fanady was arrested and charged with three counts of felony forgery. The case was subsequently dismissed.

obtained the dissolution by falsely claiming he was a resident of Florida, Harnack was "missing in action" with "address unknown," Harnack had a default judgment entered against her and "[t]here is no marital property or marital debts to divide, as the parties have previously divided all of their personal property." In September 2011, Fanady sent a letter with a copy of the Florida dissolution judgment to the Cook County judge presiding over the Illinois dissolution action, asserting the Florida judgment dissolving his marriage to Harnack was binding in Illinois and the Cook County court no longer had jurisdiction over the divorce proceedings. Ultimately, in January 2012, by consent decree on Harnack's motions to dismiss, the Florida court vacated the dissolution judgment.

¶ 26    A few days after entry of the dissolution judgment in this matter, in violation of the court's order directing him to transfer title to the house from the trust to Harnack, Fanady transferred the marital home from the ATG trust into a trust at West Suburban Bank, naming his father and a friend as beneficial trustees. He subsequently, again in violation of the judgment for dissolution of marriage and assorted injunctions, listed the property for sale.

¶ 27    On October 11, 2011, Alpha moved to remove the consolidated case to the United States District Court for the Northern District of Illinois, Eastern Division. The district court dismissed the case for lack of jurisdiction, noting that Alpha's remedies were in state court. Alpha appealed to the United States Court of Appeals for the Seventh Circuit, which upheld the district court's decision in December 2011. The case was remanded to the Cook County circuit court. Meanwhile, in November 2011, Alpha had filed a second action in federal district court challenging the judgment for dissolution of marriage and naming Harnack, her attorney and the Cook County judge who issued the judgment for dissolution of marriage as defendants. The district court again dismissed the action for lack of jurisdiction. The court of appeals affirmed the dismissal in March 2012, explaining that Alpha was a "state-court loser" when it was ordered to relinquish its ownership of the CBOE shares and a federal district court has no jurisdiction to overturn the state court judgment. Finding "the appeal was frivolous," the court of appeals granted Harnack's motion for sanctions, awarding her attorney $15,000 in attorney fees and costs.

¶ 28    In late March 2010, Alpha filed in the Cook County circuit court's chancery division the same action challenging the judgment for dissolution of marriage as it had filed in federal court, naming Harnack, her attorney and the judge who issued the judgment for dissolution of marriage as defendants. The chancery division court granted the defendants' motions to dismiss in December 2012. Finally, in January 2012, Fanady's counsel filed an appearance in the dissolution action and, on April 3, 2012, eight months after entry of the judgment for dissolution of marriage, Fanady filed his motion to set aside the judgment for dissolution of marriage, which the court denied on May 11, 2012.

¶ 29    Fanady filed a notice of appeal May 15, 2012, and an amended notice of appeal on June 2, 2012, requesting that we vacate the May 11, 2012, order denying his section 2-1301(e) motion and section 2-1401(a) petition to set aside the judgment for dissolution of marriage.[7]

---

[7]In his notice of appeal, Fanady also challenges the court's April 12, 2012, order denying the motion to change venue under section 2-1101.5. However, he does not raise this argument in his briefs on appeal and has, therefore, abandoned it. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived ***.").

¶ 30                                     ANALYSIS

¶ 31     Fanady raises two arguments on appeal: (1) the court erred in denying his section
2-1301(e) motion to vacate on the basis that section 2-1301(e) did not apply and (2) the court
erred in denying his section 2-1401(a) petition to vacate based on his lack of diligence. As set
forth below, we affirm the trial court on both determinations but remand with instructions.

¶ 32     Fanady also argues, in a motion taken with the case, that portions of Harnack's brief on
appeal should be stricken for failure to comply with the procedural requirements of Illinois
Supreme Court Rule 341 (eff. Feb. 6, 2013). Rule 341 sets forth the format and contents of
appellate briefs and its requirements are mandatory. *Voris v. Voris*, 2011 IL App (1st)
103814, ¶ 8. We agree that Harnack's brief does not comply with some of the requirements
of Rule 341 and is, therefore, subject to dismissal. *Id*. However, it is adequate for our review
of the issues presented since we have the benefit of the record before us as well as Fanady's,
Israelov's and CBOE Holdings and Computershare's proper citations to the record on appeal.
We, therefore, deny the motion to strike.

¶ 33                        1. Section 2-1301(e) Motion to Vacate

¶ 34     We affirm the trial court's finding that section 2-1301(e) did not apply. Section 2-1301(e)
provides: "The court may in its discretion, before final order or judgment, set aside any
default, and may on motion filed within 30 days after entry thereof set aside any final order
or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e)
(West 2012). "Section 2-1301(e) is available to seek relief from any *nonfinal* order of default
or from a *final* default judgment within 30 days of its entry." (Emphases in original.) *Stotlar
Drug Co. v. Marlow*, 239 Ill. App. 3d 726, 728 (1993).

¶ 35     The court's November 1, 2010, order finding Fanady in default is not a final order
because it does not dispose of the case and determine the rights of the parties. *Jackson v.
Hooker*, 397 Ill. App. 3d 614, 620 (2010). Instead, it "is simply an interlocutory order that
precludes the defaulting party from making any additional defenses to liability but in itself
determines no rights or remedies." (Internal quotation marks omitted.) *Id*. The judgment for
dissolution of marriage, however, is a final default judgment.

¶ 36     "A judgment *** is not final unless it determines the litigation on the merits so that, if
affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re
Marriage of Susman*, 2012 IL App (1st) 112068, ¶ 12. "When an order resolves less than all
the claims brought by a party, the order is not final and appealable." *Id.* The litigation at issue
here concerned Harnack's petition for dissolution of marriage. "A petition for dissolution
advances a single claim; that is, a request for an order dissolving the parties' marriage. The
numerous other issues involved, such as custody, property disposition, and support are
merely questions which are *ancillary* to the cause of action." (Emphasis in original.) *In re
Marriage of Leopando*, 96 Ill. 2d 114, 119 (1983). "[U]ntil all of the ancillary issues are
resolved, the petition for dissolution is not fully adjudicated." *Id.* In other words, although
there are some narrow exceptions, "generally only a judgment that does not reserve any
issues for later determination is final and appealable." *In re Marriage of Susman*, 2012 IL
App (1st) 112068, ¶ 13.

¶ 37     The court entered the judgment following a prove-up hearing on August 3, 2011, on
Harnack's petition for dissolution of marriage. At issue in the dissolution action were, *inter
alia*, the allocation of the parties' substantial assets, maintenance and attorney fees. The court

resolved all of these issues by allocating all of the parties' marital and nonmarital assets between the parties and awarding Harnack maintenance and attorney fees. It did not reserve any of the issues involved in the petition for dissolution for later determination. The judgment for dissolution of marriage terminated the litigation between Harnack and Fanady, the parties to the dissolution action, and decided their "dispute" entirely and is, therefore, a final judgment. *Jackson*, 397 Ill. App. 3d at 620.

¶ 38    Fanady argues that the judgment for dissolution of marriage was not final because it did not resolve all matters between the parties related to the issue of the distribution of property. Pointing out that ownership of the CBOE Holdings stock was at the heart of the divorce dispute and that the court had consolidated Israelov's action with the dissolution action, he asserts that, "by specifically reserving a determination on Israelov's claim to 40,000 shares of the CBOE Holdings stock, the trial court expressly left complete resolution of the issues related to the distribution of stock for a future time." Fanady argues that, because the judgment awarded 140,000 shares to Harnack but only provided for distribution of 120,000 shares to her, ownership of the remaining 20,000 shares "was tied up in Israelov's claim, and, hence, could not be resolved until the Israelov case was resolved" and "[i]t strains credibility to suggest that a ruling that leaves the issue of ownership of over $650,000 [worth of shares] in an unresolved state is 'final.' "

¶ 39    The court did not reserve determining the allocation of the 40,000 shares. It completely allocated all of the parties' assets, including all of the shares, between the parties, awarding Harnack 140,000 shares and Fanady the remainder. Then, in recognition that 40,000 of the total shares might be nonmarital, it set those shares aside pending the outcome of Israelov's action. Implicit in the court's judgment is its recognition that (1) if Israelov's action succeeds, then the parties will not receive any of the 40,000 shares because the shares, although presumptively marital, were shown to be nonmarital and (2) if Israelov's action fails, then the parties will receive their marital portion of the 40,000 shares as set forth in the judgment, *i.e.*, 20,000 shares to Harnack, and the remainder (20,000 shares) to Fanady. Either way, no matter the outcome of the Israelov action, the court fully decided the disposition of the 40,000 shares between the two parties to the petition for dissolution.[8] All that remained was the execution of the judgment.

---

[8]The report of proceedings of the prove-up hearing supports this interpretation. The report of proceedings shows that the court heard argument from counsel for Harnack, Israelov, Katz & Stefani, LLC, a law firm seeking fees from Harnack in the dissolution action, and Grund & Leavitt regarding the proposed distribution of 140,000 shares to Harnack. Each asserted claims to the shares and/or against Fanady and/or Alpha. By agreement of all present, the court ordered that the judgment for dissolution of marriage be amended to reflect that, as suggested by counsel for Grund & Leavitt, Harnack would be awarded 140,000 shares as originally proposed but would receive only 120,000 of the shares until the court resolved the Israelov issue "because that is half of what [she] is seeking. If [the court] finds that Israelov isn't entitled to [40,000 shares], she gets 20,000 of that, Mr. Fanady gets 20,000." The court then heard testimony from Harnack, in which she stated she agreed that "the amount of shares pursuant to the judgment" would be reduced to 120,000 shares and that the balance would remain in escrow for distribution to Israelov as would be determined at a later date. Accordingly, the report of proceedings of the prove-up hearing shows that, given that the 40,000 shares claimed by Israelov might be nonmarital, those shares should, as Harnack's counsel succinctly stated, come "off the top" of all marital shares rather than solely from Harnack's shares.

¶ 40    The fact that Israelov's action remained unresolved does not affect the finality of the dissolution judgment. Israelov is not a party to the dissolution of marriage. The court's consolidation of his contract action against Fanady and Alpha with Harnack's dissolution action against Fanady does not make Israelov a party to the dissolution action, let alone to the dissolution judgment. Section 2-1006 of the Code provides that "actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2012). There are three types of consolidations:

> "(1) where several actions are pending involving substantially the same subject matter, the court may stay proceedings in all but one and see whether the disposition of the one action may settle the others thereby avoiding multiple trials on the same issue; (2) where several actions involve an inquiry into the same event in its general aspects, the actions may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been brought as a single action, the cases may be merged into one action, thereby losing their individual identity, to be disposed of as one suit." *Shannon v. Stookey*, 59 Ill. App. 3d 573, 577 (1978).

¶ 41    Here, the second type of consolidation is at issue. Although Israelov's action to enforce his agreement with Fanady/Alpha and Harnack's petition for dissolution involve an inquiry into the same event in its general aspects, *i.e.*, the purchase of a CBOE seat and the disposition of the shares exchanged for that seat, it is clear that the consolidation was only done for convenience. Separate case numbers were retained and, as the judgment for dissolution of marriage shows, separate judgments would be entered in each case. The judgment for dissolution of marriage pertained solely to Harnack's dissolution petition and, although it noted that Israelov's action remained pending, made no determination regarding that action.

¶ 42    The consolidation did not merge the two causes into a single suit, change the rights of the parties to each suit or make the parties in one suit parties in the other suit. The two actions did not merge into a single suit and, thus, Harnack did not become a party in the contract action between Israelov and Fanady/Alpha and Israelov did not become a party in the dissolution action between Harnack and Fanady. *Shannon*, 59 Ill. App. 3d at 577. The fact that Israelov's action remained unresolved thus had no impact on the finality of the judgment for dissolution of marriage as to the rights between the parties to the dissolution action, Harnack and Fanady. "To be final, an order or judgment must terminate the litigation between the parties on the merits or dispose of the rights of the parties, either on the entire controversy or a separate part thereof." *In re Haley D.*, 2011 IL 110886, ¶ 61. The August 3, 2011, judgment for dissolution of marriage meets this test and is, therefore, a final judgment.

¶ 43    As the August 3, 2011, judgment for dissolution of marriage was a final default judgment, Fanady had up to 30 days after August 3, 2011, to file his section 2-1301(e) motion to set aside the judgment. *Jackson*, 397 Ill. App. 3d at 621; 735 ILCS 5/2-1301(e) (West 2012). Fanady did not file his section 2-1301(e) motion to set aside the judgment within 30 days. Instead, he filed it on April 3, 2012, *eight months* after the judgment was entered. The trial court's jurisdiction to consider a section 2-1301(e) motion lapses if the motion is filed more than 30 days following entry of final judgment. *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 206 (2010). Therefore, the trial court correctly

determined that Fanady's untimely section 2-1301(e) motion could not be used to set aside the judgment for dissolution of marriage.

¶ 44　　The trial court correctly determined that Fanady's section 2-1301(e) motion filed more than 30 days after entry of the judgment was untimely and his challenge to the judgment should be considered under section 2-1401(a) and not section 2-1301(e). We affirm the court's denial of Fanady's section 2-1301(e) motion to set aside the judgment for dissolution of marriage.

¶ 45　　We would affirm the court's denial of Fanady's section 2-1301(e) motion to set aside the judgment even if the motion had been timely filed and the court had evaluated it under section 2-1301(e). The decision as to whether the default should be set aside under section 2-1301(e) is discretionary. *In re Haley D.*, 2011 IL 110886, ¶ 69 (citing 735 ILCS 5/2-1301(e) (West 2008)). "In exercising that discretion, courts must be mindful that entry of default is a drastic remedy that should be used only as a last resort" and that provisions governing relief from defaults "are to be liberally construed toward that end." *Id.* The overriding consideration in deciding a section 2-1301(e) motion to set aside a default judgment "is simply whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *Id.* However, "[i]n making this assessment, a court should consider all events leading up to the judgment," as " '[w]hat is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome. [Citation.]' " *Id.* (quoting *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001)).

> "Whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson v. Bailey*, 384 Ill. App. 3d 546, 549 (2008) (citing *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001)).

¶ 46　　Here, the record shows a lack of diligence by Fanady as a result of his complete refusal to participate in the dissolution proceedings for more than 15 months, his attempts to evade service of process and his refusal to comply with the court's orders regarding payment of maintenance and with its restraining orders and injunctions barring him from transfer of any assets held by him or his enterprises. It shows his attempts to evade the jurisdiction of the court and to defraud this court and the Florida court by obtaining a dissolution of marriage judgment under false pretenses in Florida and by moving the action to federal court through Alpha's action. It shows his forgery of a dissolution judgment in order to obtain a religious divorce and his attempts to hide marital assets by selling one presumptively marital CBOE seat and hiding the money received in Switzerland and by transferring 120,000 presumptively marital shares from the Alpha and Fanmare accounts. To paraphrase the court in *Mann*, 324 Ill. App. 3d at 379, Fanady was the architect of his own predicament, and his complaint now that he was denied substantial justice will not be heard by this court.

¶ 47　　It would not be reasonable to vacate the judgment and force Harnack to proceed to trial on her petition for dissolution of marriage a second time where any alleged errors in the judgment or inequalities in the distribution of assets are solely due to Fanady's failure to participate in the dissolution proceedings. Any errors or injustices in the judgment for dissolution of marriage of which Fanady now complains would not have occurred absent his

abandonment of the litigation. Fanady chose not to participate in the litigation. He must now live with the consequences of that decision.

¶ 48   We also take note of the facts that one CBOE seat was sold and the proceeds sent to Switzerland, 120,000 CBOE Holdings shares are missing and unaccounted for and Fanady has failed to comply with the court's maintenance order. In light of these considerations, Fanady has not shown that the judgment for dissolution of marriage imposes a penalty or hardship on him.

¶ 49   We conclude that substantial justice was done and, even if the court had considered Fanady's motion to set aside the judgment for dissolution of marriage under section 2-1301(e), it did not abuse its discretion in denying the motion. We affirm the order denying Fanady's section 2-1301(e) motion to set aside the judgment.

¶ 50                        2. Section 2-1401(e) Petition to Vacate

¶ 51   We also affirm the trial court's denial of Fanady's section 2-1401(a) petition to vacate based on his lack of diligence.

¶ 52   Once the court's jurisdiction to vacate a final judgment under section 2-1301(e) lapses, section 2-1401 provides a means to reopen the judgment. *Blazyk*, 406 Ill. App. 3d at 206.

> "Section 2-1401 establishes a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401(a) (West 2002). While the remedy in the statute does have its roots in common law equity, the General Assembly abolished the common law writ system and replaced it with the statutory postjudgment petition. [Citations.] Section 2-1401 requires that the petition be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. 735 ILCS 5/2-1401(b) (West 2002). The statute further requires that the petition be supported by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2002)." *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007).

"To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986).

¶ 53   When a trial court dismisses a section 2-1401 petition, or enters judgment on the pleadings of said petition without holding an evidentiary hearing, the standard of review to be applied is *de novo*. *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 9 (citing *Vincent*, 226 Ill. 2d at 14 (which dealt with narrow issue in which a judgment was being challenged for voidness under section 2-1401(f))). However, where, as here, a typical section 2-1401 two-tiered analysis is involved, "(1) the issue of a meritorious defense is a question of law and subject to *de novo* review; and (2) if a meritorious defense exists, then the issue of due diligence is subject to abuse of discretion review." *Cavalry Portfolio Services*, 2012 IL App (1st) 111690, ¶ 10 (following *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 326-27 (2010), and *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 206 (2010)).

¶ 54   In his reply brief, Fanady asserts that he had the following meritorious defense:

"[T]he Judgment for Dissolution overstated the marital property by including stock held by Fanady with partners, whose interests were not taken into account and/or protected, resulting in property owned by others who were not party to the divorce action being awarded to Harnack. This error also caused the court to award a disproportionate share of stock to Harnack."

First, Fanady has no standing to assert that the judgment should be vacated because the interests of *his partners* were not protected.[9] It was for the negatively impacted partners to mount such a challenge to the judgment, not Fanady.

¶ 55    Second, as to there being a disproportionate share awarded to Harnack, Fanady presented no evidence to support his section 2-1401 petition. Section 2-1401(b) requires that a section 2-1401 petition be supported by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2012). Although Fanady submitted an affidavit in support of his petition, the affidavit merely states that he is the respondent and over 21 years of age, nothing more. He submitted no evidence to demonstrate matters not of record, such as the existence of the partnerships or the number of shares he actually held.

¶ 56    Moreover, even if Fanady had shown a meritorious defense by a preponderance of the evidence, his section 2-1401 petition fails to allege, let alone show by a preponderance of the evidence, his due diligence. Fanady made no claim below that he was diligent in discovering and presenting his defense to the trial court in the original action or in filing his section 2-1401 petition, and given the record before us, it is clear he could never make such a showing. On appeal, he again makes no claim that he complied with the due diligence requirements of section 2-1401. Instead, he asserts that "the requirement that substantial justice be achieved is more important than the due diligence requirements" and "justice and good conscience" require that the judgment for dissolution of marriage be vacated. Specifically, he argues that the judgment for dissolution of marriage "is so absurdly uneven and unfair that justice and fairness require it be set aside." Fanady asserts the judgment awarded Harnack "far in excess" of a fair share of the marital assets given the short length of marriage and that it was based on a "fundamental misunderstanding or misrepresentation" regarding the amount of CBOE Holdings stock owned by Fanady and, given the ISRFAN and Fanmare partnerships, the clear error that he was the 100% owner of 280,000 shares of stock.

¶ 57    Fanady is asking for equitable relief. In *People v. Vincent*, 226 Ill. 2d 1 (2007), in finding that the *de novo* standard of review rather than the abuse of discretion standard of review should be applied to dispositions under section 2-1401 entered without an evidentiary hearing, our supreme court dispelled the "erroneous belief that a section 2-1401 petition 'invokes the equitable powers of the court, as justice and fairness require.' " *Vincent*, 226 Ill. 2d at 15 (quoting *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 613 (1963)). It stated that this "observation" had been true when such relief was available under common law writs but, when the legislature abolished the writs in favor of the section 2-1401 statutory remedy, "it

---

[9]"[A] plaintiff has standing if he is able to show some injury in fact to a legally recognized interest. [Citation.] A proponent must assert his own legal rights and interests, rather than basing his claim for relief upon the rights of third parties." *Helmig v. John F. Kennedy Community Consolidated School District No. 129*, 241 Ill. App. 3d 653, 658 (1993). "Where the effect of the challenged action is generalized, speculative or *de minimus*, the complaining party will not have standing." *Id.*

- 15 -

became inaccurate to continue to view the relief in strictly equitable terms" and "relief [under section 2-1401] is no longer purely discretionary." *Vincent*, 226 Ill. 2d at 16.

¶ 58 The *Vincent* holding notwithstanding, courts have created equitable exceptions to the due diligence requirement of section 2-1401. Fanady cites to *Cavalry Portfolio Services*, 2012 IL App (1st) 111690, in which the court held: "a trial court ruling denying section 2-1401 relief can be vacated even in the absence of diligence where the defendant has a meritorious defense and actively seeks to vacate the judgment. [Citation.] More important than the due diligence requirement is the requirement that substantial justice be achieved." *Cavalry Portfolio Services*, 2012 IL App (1st) 111690, ¶ 18. The court explained:

" 'One of the guiding principles *** of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. [Citations.] *** Because a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated even though the requirement of due diligence has not been satisfied.' *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 *** (1986) (citing *American Consulting Association, Inc. v. Spencer*, 100 Ill. App. 3d 917 *** (1981), *Manny Cab Co. v. McNeil Teaming Co.*, 28 Ill. App. 3d 1014 *** (1975), and *George F. Mueller & Sons, Inc. v. Ostrowski*, 19 Ill. App. 3d 973 *** (1974))." *Cavalry Portfolio Services*, 2012 IL App (1st) 111690, ¶ 18.

¶ 59 As Israelov asserts, the cases on which *Cavalry Portfolio Services* relied in coming to the above conclusion all predate *Vincent* by more than 20 years and, therefore, do not take into account the *Vincent* holding that section 2-1401 does not "invoke[ ] the equitable powers of the court, as justice and fairness require." (Internal quotation marks omitted.) *Vincent*, 226 Ill. 2d at 15. However, *Vincent* also stated that relief under section 2-1401 should not continue to be viewed "in *strictly* equitable terms" and "is no longer *purely* discretionary" (emphases added) (*Vincent*, 226 Ill. 2d at 16), thus implying that, although no longer a strictly equitable remedy, relief under section 2-1401 could have a discretionary component. As the court in *Cavalry Portfolio Services* pointed out,

"many, more recent decisions of the appellate court have recognized that the *Vincent* decision dealt with a narrow issue under section 2-1401(f) in which a judgment was challenged for voidness. The *Vincent* decision did not involve the due diligence, meritorious defense, and two-year limitation requirements that apply to other actions brought under section 2-1401. *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 326-27 *** (2010); see also [*Blazyk*, 406 Ill. App. 3d at 206]. The *Borgetti* court found that the allegation of voidness in *Vincent* had nothing to do with equitable principles. *Borgetti*, 403 Ill. App. 3d at 327 ***. The court found that 'equitable principles and the exercise of discretion still apply in section 2-1401 proceedings not involving judgments alleged to be void.' *Id.* at 328, ***." *Cavalry Portfolio Services*, 2012 IL App (1st) 111690, ¶ 10.

In other words, the *Vincent* decision does not foreclose invocation by the trial court of its equitable powers to waive the due diligence requirements of section 2-1401 under appropriate circumstances. Those circumstances do not exist here.

¶ 60 "Relaxation of the due diligence requirement thereby entitling a defendant to a motion to vacate a judgment is justified only under extraordinary circumstances." *Ameritech Publishing*

*of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005). Such circumstances exist, for example, "when it is clear from all the circumstances that a party has procured an unconscionable advantage through the extraordinary use of court processes" or where "some fraud or fundamental unfairness" has been shown. *American Consulting Ass'n v. Spencer*, 100 Ill. App. 3d 917, 923 (1981). Extraordinary circumstances may also exist where the failure to exercise due diligence was caused by circumstances that occurred outside the record and that were beyond the petitioner's control. *Ameritech Publishing of Illinois, Inc.*, 362 Ill. App. 3d at 60.

¶ 61    Fanady presents no evidence to show that extraordinary circumstances exist to excuse his lack of diligence. He presents no evidence to show that Harnack used court processes to gain an unconscionable advantage or that her conduct suggests fraud or fundamental unfairness. He presents no evidence to show that, as a result of circumstances outside the record and beyond his control, *i.e.*, through no fault or negligence on his part, the existence of a valid defense was not made known to the trial court and that he had a reasonable excuse for failing to take such action within the applicable time limits. Essentially, his only assertion is that the judgment for dissolution of marriage is "uneven and unfair" and based on a "fundamental misunderstanding or misrepresentation" regarding the amount of CBOE Holdings stock he owned. On the record before us, it is clear that any errors or one-sidedness in the judgment are solely due to Fanady's own conduct, the result of his refusal to participate in the dissolution proceedings.

¶ 62    The court based the judgment for dissolution of marriage on Harnack's evidence regarding the length of the marriage, the assets acquired by the parties during the marriage, Harnack's limited earning capacity, Fanady's vastly greater earning capacity, Harnack's recently diagnosed illness and Fanady's failure to comply with the court's order awarding Harnack maintenance and the resultant arrearage, all of which are factors to be considered in determining the allocation of marital assets under section 504 of the Illinois Marriage and Dissolution of Marriage Act. Rather than participate in the action and present his own evidence to the court to rebut Harnack's evidence, Fanady chose instead to make underhanded efforts to prevent Harnack from getting her appropriate share of the marital assets and to avoid the trial court's jurisdiction. His behavior in this case has been so egregious, so contemptuous of the law and the court, that he cannot now complain that substantial justice requires that the judgment for dissolution of marriage be set aside. No exceptional circumstances exist that warrant relaxing the due diligence requirements of section 2-1401 for this individual. The court did not err in denying Fanady's section 2-1401 petition.

¶ 63                                    3. Remand With Directions

¶ 64    The court did not err in denying Fanady's motion to vacate the judgment under section 2-1301(e) or section 2-1401. Therefore, reversal and remand is not warranted under either of Fanady's arguments. However, given that the parties disagree regarding the source of the 40,000 shares that the court ordered transferred to escrow, we remand for clarification of this transfer provision.

¶ 65    In its dissolution of marriage judgment, the court found "the parties *** acquired various marital properties, including *** [t]he equivalent of 320,000 *** shares of [CBOE Holdings]

stock (Steve Fanady being 100% owner of at 280,000)."[10] It awarded Harnack 140,000 shares as her marital portion. It then ordered that CBOE Holdings and Computershare transfer 120,000 shares to Harnack and that 40,000 shares be transferred into an escrow account pending resolution of Israelov's claims. The parties do not agree in their interpretation of this transfer provision.

¶ 66    In her brief on appeal, Harnack asserts "it is clear that said 40,000 shares were placed in escrow out of the 120,000 shares awarded to her."[11] However, during oral argument before this court, represented by new counsel, Harnack asserted that the trial court intended that the 40,000 shares to be placed in escrow were to be taken from the 280,000 total shares and she be awarded 120,000 of the remaining 240,000 shares.[12] In his briefs on appeal, Fanady asserts the latter interpretation of the judgment and the report of proceedings of the prove-up hearing arguably supports this interpretation. Additionally, CBOE Holdings and Computershare interpret the judgment for dissolution of marriage in the same manner as does Fanady and as did Harnack at oral argument, so that CBOE Holdings and Computershare are obligated to transfer 120,000 shares to Harnack immediately and transfer 40,000 shares to escrow, for a total transfer of 160,000 shares. However, as in their interpleader action, they point out that they cannot comply with the judgment for dissolution of marriage as entered

---

[10]The unrebutted evidence before the court was that Fanady acquired four CBOE seats during the marriage. These seats were the equivalent of 320,000 CBOE Holdings shares given that each seat was exchangeable for 80,000 shares when CBOE Holdings went public in June 2010 (4 @ 80,000 = 320,000). However, as a result of Fanady's selling of one seat, possible selling of half of one of his three remaining seats to Marme and removing 120,000 shares of the 240,000 shares actually received for the three seats in the Alpha and Fanmare accounts, by the time the judgment for dissolution of marriage was entered, "the equivalent of 320,000 [CBOE Holdings] shares" actually held was as follows:

-$2.775 million in a Swiss bank account;

-80,000 shares in the Alpha account, of which 40,000 are claimed by ISRFAN/Israelov;

-40,000 shares in the Fanmare account, all of which are claimed by Fanmare/Marme;

-120,000 shares, valued in excess of $4 million, transferred out of the Alpha and Fanmare accounts in early 2011 and disposition unknown; and

-possibly another $700,000 received from Marme for her half seat, the disposition of which is unknown.

[11]Israelov, although not a party to the judgment for dissolution of marriage, agreed with this interpretation during oral argument before this court, arguing that the trial court had intended that the 40,000 shares to be placed in escrow were to come from the 120,000 shares the court ordered CBOE Holdings and Computershare to transfer to Harnack, *i.e.*, that Harnack was to receive only 80,000 shares.

[12]Harnack's calculation:

280,000 total shares

- 40,000 arguably nonmarital shares to be transferred to escrow

= 240,000 remaining marital shares

    X 50% marital allocation

= 120,000 shares to Harnack immediately

If Israelov fails to show that he was entitled to the 40,000 shares, *i.e.*, that the shares are nonmarital, then Harnack would receive an additional 20,000 shares (50% of the 40,000 escrowed shares).

because they are in possession of only 120,000 shares. Given that conflicting interpretations of the transfer provision in the judgment for dissolution of marriage have arisen and that CBOE Holdings and Computershare have informed the court that they are holding only 120,000 shares, we *sua sponte* remand to the trial court to amend the judgment for dissolution of marriage to clarify this point.

¶ 67 We caution that, by this remand, we are not vacating the judgment for dissolution of marriage and are not inviting further litigation regarding Fanady's attempts to vacate the judgment. We hold here that, for the reasons set forth above, Fanady is not entitled to relief under either section 2-1301 or section 2-1401. Our remand is for the sole purpose of clarifying the trial court's intent with regard to the 40,000 CBOE Holdings shares to be transferred to escrow.

¶ 68                                    CONCLUSION
¶ 69 For the reasons stated above, we deny Fanady's motion to strike Harnack's brief, affirm the trial court and remand with directions.

¶ 70 Affirmed and cause remanded with directions.