# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Opalinska*, 2015 IL App (1st) 143407

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF IRENE OPALINSKA, Deceased (David A. Epstein, Public Administrator of Cook County, Petitioner-Appellant, v. Darota Opalinska Chaban, Respondent-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-3407 |
| Filed | November 5, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-P-6112; the Hon. Karen L. O'Malley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gary A. Weintraub, of Gary A. Weintraub, P.C., of Northfield, and Thomas More Leinenweber, of Leinenweber, Baroni & Daffada LLC, of Chicago, for appellant.<br><br>Joel A. Brodsky, of Chicago, for appellee. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice McBride and Justice Howse concurred in the judgment and opinion. |

## OPINION

¶ 1      Darota Opalinska Chaban, the daughter of Irene Opalinska, and the wife of William Chaban, was convicted of perjury and obstruction of justice in connection with her statements during the investigation of her mother's murder. Her husband was eventually convicted of the murder.

¶ 2      This appeal involves the probate estate of Irene Opalinska. The administrator of the estate, the public administrator (Administrator), argued that Darota could not benefit from the estate for two reasons. First, section 2-6 of the Probate Act of 1975 (Act), commonly known as the "Slayer Statute," prohibits Darota from inheriting her mother's estate due to the indirect benefit to her husband. 755 ILCS 5/2-6 (West 2012). Moreover, the Administrator argued that Darota should not inherit her mother's estate due to her "unclean hands" in the investigation of the murder.

¶ 3      The trial court rejected the Administrator's arguments, finding that Darota is eligible to inherit her mother's estate. The Administrator appeals the court's order. For the reasons that follow, we affirm.

¶ 4                           BACKGROUND

¶ 5      The following facts were established in *People v. Opalinska*, 2013 IL App (1st) 110486-U, a criminal case involving respondent, Darota Opalinska Chaban (Darota). Darota married William Chaban (Chaban) in Las Vegas on June 9, 2007. They returned to Chicago on June 13 and informed Darota's mother, Irene Opalinska, of their marriage. Irene was initially upset, but eventually calmed down. On June 18, 2007, Irene was discovered dead in her condominium by Darota and Chaban. Irene was last seen on Friday, June 15, at her place of employment. Darota told the police, and later a grand jury, that she had not been at her mother's condominium that Friday or the rest of the weekend; that she was never in the condominium on the 15th; and that she was with Chaban most of the day. After Darota was confronted with phone records that placed her in the condominium on Friday, she admitted that she had lied and claimed that she was following Chaban's instruction. Darota was convicted of perjury and obstruction of justice. Chaban was charged and convicted of first-degree murder of Irene and was sentenced to 45 years in prison.

¶ 6      Darota filed a petition for probate of Irene's will in the Circuit Court of Cook County and the court appointed her administrator of the estate. Darota later resigned, and the trial court appointed the Administrator to administer the estate. The Administrator argued that Darota was barred from inheriting her mother's estate by section 2-6 of the Act. 755 ILCS 5/2-6 (West 2012). The trial court denied the Administrator's petition, finding that Darota could inherit her mother's estate because there was no evidence that Darota was involved in Irene's murder.

¶ 7      The Administrator appeals, arguing that any property inherited by Darota would indirectly benefit Chaban since they are still married, and therefore she cannot inherit under section 2-6. Moreover, the Administrator argues that Darota should be barred from inheriting from her mother because of her "unclean hands" in lying to the police who were investigating her mother's death.

¶ 8

¶ 9     We begin by addressing two of Darota's arguments regarding alleged improprieties in the Administrator's appeal. Darota first argues that the Administrator improperly cited to this court's Illinois Supreme Court Rule 23(b) (eff. July 1, 2011) decision in her criminal case titled *People v. Opalinska*, 2013 IL App (1st) 110486-U, to establish the facts of this case. Second, she argues that the Administrator's citation to her husband's criminal case is improper because she was not a party to that case, and, accordingly, had no opportunity to respond to any allegations in that case.

¶ 10     Rule 23(e) states that written orders filed under Rule 23(b) are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e) (eff. July 1, 2011). Our supreme court has held that the doctrine of collateral estoppel applies to issues determined in criminal convictions. *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 384 (2000).

¶ 11     "Collateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001) (citing *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 7 (1979)).

¶ 12     Here, the Administrator does not cite to Darota's criminal case for its legal precedent, but for purposes of collateral estoppel. Such use of the court's unpublished opinion is expressly permitted by the rule. Thus, citation to Darota's criminal case was appropriate. Ill. S. Ct. R. 23(e) (eff. July 1, 2011).

¶ 13     The doctrine, however, does not apply to *People v. Chaban*, 2013 IL App (1st) 112588. A necessary element for application of collateral estoppel is that the party against whom estoppel was asserted, in this case, Darota, was a party to the prior adjudication. Darota was not a party to her husband's criminal case. Although collateral estoppel does not apply, we may nonetheless take judicial notice of this court's opinion affirming Chaban's conviction. *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (An appellate court may take judicial notice of another court's written decisions.).

¶ 14     Darota next argues that the Administrator is bringing this appeal "for an impermissible reason," in that the Administrator merely wishes the court to advise it on how it should proceed in future cases of a similar nature. Darota argues that the Administrator is seeking an advisory opinion, which is not the role of the courts to provide. We reject Darota's argument as without merit. There is a present controversy over whether Darota should be allowed to inherit her mother's estate. In *McCormick v. Robertson*, a case cited by Darota, the court noted that a case must present an actual controversy, otherwise the court risks providing an impermissible advisory opinion. 2015 IL 118230, ¶ 21. A case presents an actual controversy when there is "a concrete dispute admitting of an immediate and definitive determination of the parties' rights." (Internal quotation marks omitted.) *Id.*

¶ 15     Here, the Administrator has presented a legal challenge to Darota's right to inherit her mother's estate. This controversy is definite and concrete; it is neither hypothetical nor moot and touches upon the legal relations of parties having adverse legal interests. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002). That the Administrator may also gain insight from the court's disposition of this case is not a reason to

find the case non-justiciable. Accordingly, we find the Administrator's appeal entirely appropriate.

¶ 16    At its root, this case presents a question of statutory construction, the principles of which are more than well settled. Interpretation of a statute is a question of law, which we review *de novo*. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010). The focus of statutory interpretation is to give effect to the legislature's intent. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008) (citing *People v. Perry*, 224 Ill. 2d 312, 323 (2007)). The most reliable indicator of legislative intent is the language in the statute, which we afford its plain and ordinary meaning, without resort to other aids of statutory construction. *Id.*

¶ 17    We begin, then, with the language of section 2-6 of the Act, which states:

> "Person causing death. A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance. The property, benefit, or other interest shall pass as if the person causing the death died before the decedent, provided that with respect to joint tenancy property the interest possessed prior to the death by the person causing the death shall not be diminished by the application of this Section. A determination under this Section may be made by any court of competent jurisdiction separate and apart from any criminal proceeding arising from the death ***. A person convicted of first degree murder or second degree murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of this Section.
>
> The holder of any property subject to the provisions of this Section shall not be liable for distributing or releasing said property to the person causing the death if such distribution or release occurs prior to a determination made under this Section.
>
> If the holder of any property subject to the provisions of this Section knows or has reason to know that a potential beneficiary caused the death of a person within the scope of this Section, the holder shall fully cooperate with law enforcement authorities and judicial officers in connection with any investigation of such death." 755 ILCS 5/2-6 (West 2012).

¶ 18    The Administrator argues that even though Darota herself may not have murdered her mother, the Slayer Statute nonetheless bars her inheritance because of the "indirect benefit" to Chaban. Darota responds that section 2-6 of the Act only prohibits the person who intentionally and unjustifiably killed the victim, and Darota has never been directly implicated in her mother's murder. Further, Darota argues that there is no evidence that Chaban will even receive indirect benefits from Irene's estate, as he was sentenced to prison for 45 years.

¶ 19    The Administrator urges us to equate this case to *In re Estate of Vallerius*, 259 Ill. App. 3d 350 (1994). In *Vallerius* the trial court found that two brothers intentionally and unjustifiably killed their grandmother. *Id.* at 352. The victim's sole heir was her daughter, who was the mother of the two brothers. *Id.* at 351. A few months after the murder, the victim's daughter died as well, leaving her two sons as her natural heirs. *Id.* The court found that the broad language of the statute indicated that the intent of the legislature was that the brothers should not inherit from the victim despite the fact that the inheritance was indirect and the victim's

estate flowed through the mother's intermediate estate. *Id.* at 355. The court pointed out that the statute required the court to look at the murderers as if they predeceased the victim. *Id.* Thus, the brothers were legally dead when their mother's estate inherited the estate of the victim. *Id.*

¶ 20　　*Vallerius* is distinguishable from our case. In *Vallerius* the brothers who were disinherited were the actual murderers. Although the means of inheritance was indirect, only the murderers were disinherited. Here, the Administrator seeks to disinherit a party never accused of murder, on the chance that the murderer might receive an indirect benefit.

¶ 21　　A plain reading of section 2-6 of the Act would not bar Darota's inheritance. The statute precludes someone "who intentionally and unjustifiably causes the death of another" from receiving property "*by reason of the death.*" (Emphasis added.) 755 ILCS 5/2-6 (West 2012). If Chaban were to receive any of Irene's property, it would be because Darota transferred the property to him, not because of, or by reason of, Irene's death. Further, the statute states that property "shall pass as if the person causing the death died before the decedent." If we apply the words of the statute to our case, and consider Chaban to have predeceased Irene, Darota would still inherit Irene's estate. By contrast, the murderers in *Vallerius* stood to receive their grandmother's property by reason of her death.

¶ 22　　The Administrator additionally argues that this case is similar to *In re Estate of Mueller*, a case in which the wife murdered her husband. 275 Ill. App. 3d 128, 131 (1995). In *Mueller*, the husband's will provided that, upon his death, half of his estate would go to his wife, but if she predeceased him, the wife's children from a previous marriage would receive half of his estate. *Id.* at 130. Although the trial court found it obvious that the wife was precluded from inheriting from her husband's estate, it certified a question of law for the appellate court to answer under Illinois Supreme Court Rule 308(b) as to whether the Slayer Statute prevented the husband's non-biological children from inheriting as contingent beneficiaries. *Id.* at 131; Ill. S. Ct. R. 308 (eff. Feb. 1, 1994). The court found that public policy prohibited the wife's children from taking under the will because the wife had since been released from jail and was the guardian over her children. *Mueller*, 275 Ill. App. 3d at 137. Accordingly, there was a danger that the wife could partake in the estate's property through the children. *Id.* The court noted that the case presented "unique facts and circumstances" that required the court to prevent the murderer's children from inheriting. *Id.* at 138.

¶ 23　　We find this case distinguishable from *Mueller*, in that the murderer would have actually controlled the property of the estate because her children were minors. Here, Darota is an adult and, although we might speculate, we cannot say with any certainty that Darota's inheritance would be controlled by Chaban. Moreover, unlike the murderer in *Mueller*, Chaban is still in prison. Finally, we agree that the murderer in *Mueller* should have been prevented from controlling her children's inheritance; however, we find no language in the statute to support barring anyone other than the murderer(s) from inheriting. Further, although in *Mueller* there was a real danger that the children's mother would control their inheritance, we read nothing in the statute which would permit the complete avoidance of a testator's intent regarding the named contingent beneficiaries, who were not only innocent of the murder, but whose interest had already vested.

¶ 24　　The Administrator also points to *Prudential Insurance Co. of America v. Athmer* as further support for the proposition that an innocent beneficiary should be divested of an inheritance if the murderer of the decedent might be an indirect beneficiary. 178 F.3d 473 (7th Cir. 1999). In

*Prudential*, the Seventh Circuit applied Illinois's interpretation of its Slayer Statute to a case in which a wife killed her husband, and the husband's life insurance policies named the wife's son and her sister as contingent beneficiaries. *Id.* at 474. Citing our appellate court decisions in *Mueller* and *Vallerius*, the court found that Illinois law prohibits the relative of a murderer from inheriting the murder victim's property if it would confer an indirect benefit on the murderer. *Id.* at 478. Although the Seventh Circuit questioned the wisdom of such an approach, finding no contrary precedent, the court determined that it was bound by Illinois's state court decisions. *Id.*

¶ 25    In its analysis, the Seventh Circuit noted the *Mueller* court's suggestion that the trial court make a factual determination as to whether allowing a relative of the murderer to take in the place of the murderer is likely to confer a significant benefit on the murderer. *Id*. The court noted that in *Mueller*, the court thought it important that the murderess had already been released from prison, had custody of one of her children, that the marriage had been a sham, and that the children had not lived with her husband. *Id*. The Seventh Circuit ruled that, in its case, the wife's son could be permitted to benefit from the insurance policy, because unlike in *Mueller*, the murderess mother was still in prison and the son was no longer a minor. *Id*. Thus, it was unlikely that the murderess would ever benefit significantly from the proceeds of her murdered husband's insurance policies. *Id*. at 479.

¶ 26    We first note that decisions by federal courts interpreting Illinois law are not binding and are merely persuasive. *People v. Criss*, 307 Ill. App. 3d 888, 900 (1999). Moreover, the Seventh Circuit rested its decision on *Vallerius* and *Mueller*, decisions which we find distinguishable from the present case. Finally, the Seventh Circuit itself questioned the wisdom of determining whether the murderer might be an "indirect beneficiary." If we were to prohibit all instances where the murdering party might eventually receive some indirect benefit from the inheritance, we question just how far this concept might reach. For example, if a son kills his parents, must we disinherit all of his siblings if they plan to share a portion of the inheritance with him? As the Seventh Circuit noted, Slayer Statutes do not require "a kind of reverse constructive trust" to ensure that the murderer never receives the property. *Athmer*, 178 F.3d at 476. Further, for the court to determine whether the murderer might receive an indirect benefit from the innocent beneficiary "requires an inherently speculative judgment about the future and an investigation of family relations quite likely to be of Faulknerian opacity." *Id*. at 478.

¶ 27    The Administrator further argues that Darota should be disinherited based on the final paragraph of section 2-6 of the Act which states:

> "If the holder of any property subject to the provisions of this Section knows or has reason to know that a potential beneficiary caused the death of a person within the scope of this Section, the holder shall fully cooperate with law enforcement authorities and judicial officers in connection with any investigation of such death." 755 ILCS 5/2-6 (West 2012).

¶ 28    Darota certainly did not cooperate with law enforcement and judicial officers in connection with their investigation of her mother's death. However, we do not find that this section of the Act prohibits Darota from inheriting for two reasons. First, although Darota may have had reason to know that Chaban caused Irene's death, the statute explicitly refers to a potential beneficiary, and Chaban is not a potential beneficiary. The Act does not give direction regarding cooperating with law enforcement authorities when the murderer, who is not a

beneficiary, may receive an indirect benefit. Therefore, although Darota was guilty of criminal conduct for her failure to cooperate in the investigation of her mother's death, she did not violate section 2-6 of the Act.

¶ 29 Moreover, section 2-6 of the Act does not provide a consequence for failing to cooperate with law enforcement authorities. Even if Chaban had been a beneficiary, there is nothing in the statute which would allow Darota to be disinherited for her lack of cooperation. We will not presume that the legislature intended for a holder of property who fails to cooperate with law enforcement officials to be disinherited. "It is not the province of the courts to inject provisions not found in a statute." *Wilson v. F.B. McAfoos & Co.*, 344 Ill. App. 3d 452, 457 (2003) (citing *Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673, 678 (1993)). Clearly, had the legislature so intended, it could have specified a prohibition for a noncooperating property holder in the same manner as it specified a prohibition for the murderer. Apparently, it chose not to do so. Accordingly, we do not find that section 2-6 of the Act, as it is currently written, prohibits Darota from obtaining property from Irene's estate.

¶ 30 Equitable Disinheritance

¶ 31 The Administrator also argues that even if we were to find that Darota can inherit under section 2-6 of the Act, we should, nonetheless, prohibit Darota from inheriting from her mother's estate due to her "unclean hands," as evidenced by her false statements to the police and the grand jury. Darota argues that no previous Illinois case has found the unclean hands doctrine to apply to inheritance and to do so would be "judicial legislating."

¶ 32 The unclean hands doctrine prohibits a party from seeking equitable relief if the party was guilty of fraud, misconduct, or bad faith in connection with the disputed matter. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 26 (citing *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 846 (1992)). The doctrine is based on the principles that "he who seeks equity must do equity," and that a party should not profit from his own wrongdoing. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009). In *Jackson*, our supreme court noted that the unclean hands doctrine was not favored and found that it was not applicable to the plaintiff's challenge of election law, *inter alia*, because there was no precedent for the doctrine to be applied in such a case. 2012 IL 111928, ¶¶ 26-27.

¶ 33 Here, Darota does not seek her inheritance under equitable principles, but seeks to inherit her mother's estate under Illinois's Probate Act. Moreover, as we have stated, the doctrine is not favored in Illinois, and the Administrator fails to cite to any authority applying the unclean hands doctrine to inheritance laws. Finally, the doctrine of unclean hands is meant to prevent a party from profiting from their own wrongdoing, but Darota stood to inherit her mother's estate regardless of whether she cooperated with the law enforcement and the grand jury. If she receives her mother's estate, it will not be because of her acts of perjury and obstruction of justice.

¶ 34 The only case that the Administrator cites in support of his argument is *DeHart v. DeHart*, 2013 IL 114137, which the Administrator argues shows that equitable principles are relevant to inheritance laws. In *DeHart*, the plaintiff argued that the decedent equitably adopted him, and he should therefore be entitled to a portion of the proceeds from the decedent's estate. *Id.* ¶ 12. The court recognized the doctrine of equitable adoption in cases where a close familial relationship evidences an objective intent to adopt. *Id.* ¶ 62. However, we do not find that *DeHart* supports the Administrator's position. We find significant that the court applied

- 7 -

equitable principals to adoption law, which then affected who would inherit the decedent's estate. The court did not, however, apply equitable principals to inheritance laws. Moreover, the court's reliance on equitable principles in *DeHart* allowed the plaintiff in that case to inherit what he otherwise would not have absent the equitable adoption. In our case, the Administrator seeks to disinherit a party who otherwise would take under the estate. We find no precedent for this type of equitable "relief," and believe that it is for the legislature to decide whether the doctrine should apply in similar scenarios. Therefore, we decline to apply the unclean hands doctrine for purposes of disinheriting a party who otherwise would benefit from a decedent's estate.

¶ 35                                                            CONCLUSION

¶ 36            For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 37            Affirmed.