2021 IL App (1st) 210014-U

THIRD DIVISION
December 22, 2021

No. 1-21-0014

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court |
| PAMELA HARNACK, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 08 D 02844 |
| and | ) | |
| | ) | |
| STEVE FANADY, | ) | Honorable |
| | ) | David E. Haracz, |
| Respondent-Appellant. | ) | Judge Presiding |

_____

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the trial court's order requiring former spouse to turn over assets awarded to other spouse in the dissolution judgment, or the value thereof, over claims that the order improperly engrafted new obligations into the judgment, or that it was barred by the doctrines of *res judicata*, law-of-the-case, *in pari delicto*, and unclean hands.

¶ 2    This is the latest of several appellate proceedings involving certain shares of Chicago Board Options Exchange, Inc. (CBOE) stock that was owned by appellant, Steve Fanady, during his marriage to appellee, Pamela Harnack. A common theme to all these cases is Fanady's various

efforts to avoid obligations to his former wife, as well as to his business partners. Those efforts include forging a court document, secreting assets into international accounts and to otherwise undisclosed locations, and refusing to appear in court or comply with court orders. The extensive proceedings have been discussed at length in other appeals, in particular, *In re Marriage of Harnack and Fanady*, 2014 IL App (1st) 121424 (*Harnack I*) and *In re Marriage of Harnack and Fanady*, 2019 IL App (1st) 170813-U (*Harnack II*). We will repeat the facts of those cases only insofar as they are relevant to the instant appeal.

¶ 3    The record shows that Harnack and Fanady were married in October 2003, and Harnack initiated a dissolution action against Fanady in March 2008. Fanady initially participated in the proceedings, but later stopped participating, and a default judgment was entered against him on November 1, 2010.

¶ 4    In February 2011, a separate breach of partnership action was initiated by a business partner, Jerome Israelov, against Fanady. As a general matter, Israelov alleged that he and Fanady had entered into a partnership to purchase a membership or "seat" in the CBOE, which was subsequently converted into shares of CBOE stock. In January 2011, Fanady improperly withdrew 40,000 shares of the CBOE stock from the partnership without compensating Israelov for his portion.

¶ 5    A dissolution of the marriage was entered thereafter on August 3, 2011, after an evidentiary hearing. Harnack testified at that hearing, and Fanady, again, failed to appear. In the judgment order, the court found that Fanady was worth approximately $7.3 million as of March 2010, while Harnack had minimal income, was unable to support herself, and recently had been diagnosed with an autoimmune disorder. The court found that the parties had acquired various marital property during the marriage, including the equivalent of 320,000 shares of CBOE stock, 280,000 of which

were 100% owned by Fanady. The court determined that the CBOE stock owned in Fanady's name "and/or" several specified LLCs and partnerships, including "Alpha" and "Fanmare," was "marital property acquired subsequent to the date of marriage and as a result thereof *** Harnack [wa]s awarded 140,000 shares of said [CBOE] stocks." The court noted, however, that Israelov's action remained pending, and ordered 40,000 shares of CBOE stock to be held in an escrow account pending resolution of Israelov's claim. The court instructed "CBOE, BNY Mellon Bank, and Fidelity Investments" to transfer 120,000 shares of CBOE stock to Harnack within 10 days of the judgment. "The balance" of the CBOE shares was awarded to Fanady.

¶ 6     In October 2011, in another separate action, CBOE Holdings filed an interpleader complaint against all parties claiming a portion of that stock, including Harnack, Israelov, and another of Fanady's business partners, Michelle Marme. CBOE Holdings asserted that only 120,000 shares remained in that account, and due to the conflicting claims, it was in doubt as to who had the legal right to receive the shares. The interpleader action was consolidated with the dissolution action and breach of partnership action in January 2012.

¶ 7     Thereafter, in April 2012, Fanady filed a motion to set aside the judgment for dissolution of marriage pursuant to section 2-1301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301 (West 2010)), or in the alternative, under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)). The trial court denied Fanady's motion in May 2012, finding that section 2-1301 did not apply, and that Fanady failed to show due diligence as required by section 2-1401. Fanady appealed.

¶ 8     In *Harnack I*, this court affirmed the denial of Fanady's motion to vacate. We initially explained the background of the case, in that three cases had been consolidated, specifically the dissolution case, Israelov's lawsuit, and the interpleader action. We noted, however, that the

3

consolidation did not merge the cases into a single suit, change the rights of the parties to each suit, or make the parties in one suit parties in the other suit. *Harnack*, 2019 IL App (1st) 170813-U, ¶ 42 (citing *Shannon*, 59 Ill. App. 3d at 577).

¶ 9     In analyzing Fanady's appellate claim under section 2-1301, we noted that the record

"show[ed] a lack of diligence by Fanady as a result of his complete refusal to participate in the dissolution proceedings for more than 15 months, his attempts to evade service of process and his refusal to comply with the court's orders regarding payment of maintenance and with its restraining orders and injunctions barring him from transfer of any assets held by him or his enterprises. It shows his attempts to evade the jurisdiction of the court and to defraud this court and the Florida court by obtaining a dissolution of marriage judgment under false pretenses in Florida and by moving the action to federal court through Alpha's action. It shows his forgery of a dissolution judgment in order to obtain a religious divorce and his attempts to hide marital assets by selling one presumptively marital CBOE seat and hiding the money received in Switzerland and by transferring 120,000 presumptively marital shares from the Alpha and Fanmare accounts. To paraphrase the court in *Mann*, 324 Ill. App. 3d at 379, Fanady was the architect of his own predicament, and his complaint now that he was denied substantial justice will not be heard by this court.

It would not be reasonable to vacate the judgment and force Harnack to proceed to trial on her petition for dissolution of marriage a second time where any alleged errors in the judgment or inequalities in the distribution of assets are solely due to Fanady's failure to participate in the dissolution proceedings. Any errors or injustices in the judgment for dissolution of marriage of which Fanady now

complains would not have occurred absent his abandonment of the litigation. Fanady chose not to participate in the litigation. He must now live with the consequences of that decision." *In re Marriage of Harnack*, 2014 IL App (1st) 121424, ¶¶ 46-47.

¶ 10    This court further explained that a petitioner seeking to vacate a judgment under section 2-1401 must show " '(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2–1401 petition for relief.' " *Id.*, quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220–21 (1986). We rejected Fanady's argument that he showed a meritorious defense based on his claim that the judgment overstated the marital estate by including stock held by Fanady with partners, causing the court to award a disproportionate share of stock to Harnack. We noted that Fanady lacked standing to assert the interests of his partners, and that he failed to present any evidence that Harnack had been awarded a disproportionate share to support his 2-1401 petition.

¶ 11    Additionally, even if Fanady had shown a meritorious defense, we concluded that his claim would still fail based on his failure to show, or even allege, due diligence, or any extraordinary circumstances that would allow the court to excuse his lack of diligence.

"He presents no evidence to show that Harnack used court processes to gain an unconscionable advantage or that her conduct suggests fraud or fundamental unfairness. He presents no evidence to show that, as a result of circumstances outside the record and beyond his control, *i.e.*, through no fault or negligence on his part, the existence of a valid defense was not made known to the trial court and that he had a reasonable excuse for failing to take such action within the applicable time limits. Essentially, his only assertion is that the judgment for dissolution of

5

marriage is 'uneven and unfair' and based on a 'fundamental misunderstanding or misrepresentation' regarding the amount of CBOE Holdings stock he owned. On the record before us, it is clear that any errors or one-sidedness in the judgment are solely due to Fanady's own conduct, the result of his refusal to participate in the dissolution proceedings.

The court based the judgment for dissolution of marriage on Harnack's evidence regarding the length of the marriage, the assets acquired by the parties during the marriage, Harnack's limited earning capacity, Fanady's vastly greater earning capacity, Harnack's recently diagnosed illness and Fanady's failure to comply with the court's order awarding Harnack maintenance and the resultant arrearage, all of which are factors to be considered in determining the allocation of marital assets under section 504 of the Illinois Marriage and Dissolution of Marriage Act. Rather than participate in the action and present his own evidence to the court to rebut Harnack's evidence, Fanady chose instead to make underhanded efforts to prevent Harnack from getting her appropriate share of the marital assets and to avoid the trial court's jurisdiction. His behavior in this case has been so egregious, so contemptuous of the law and the court, that he cannot now complain that substantial justice requires that the judgment for dissolution of marriage be set aside." *In re Marriage of Harnack*, 2014 IL App (1st) 121424, ¶¶ 61-62.

¶ 12    In so holding, however, this court noted that the parties disagreed "regarding the source of the 40,000 shares that the court ordered transferred to escrow," and that CBOE Holdings "pointed out that they cannot comply with the judgment for dissolution of marriage as entered because they

[were] in possession of only 120,000 shares." Accordingly, this court "remand[ed] for clarification of this transfer provision." *Id.* ¶ 66. This court explicitly

> "caution[ed] that, by this remand, we are not vacating the judgment for dissolution of marriage and are not inviting further litigation regarding Fanady's attempts to vacate the judgment. We hold here that, for the reasons set forth above, Fanady is not entitled to relief under either section 2–1301 or section 2–1401. Our remand is for the sole purpose of clarifying the trial court's intent with regard to the 40,000 CBOE Holdings shares to be transferred to escrow." *Harnack*, 2014 IL App (1st) 121424, ¶ 67.

¶ 13    Fanady filed a petition for leave to appeal to the supreme court in January 2015, which the supreme court denied on September 30, 2015. Following the denial, the appellate court mandate was issued on November 12, 2015.

¶ 14    Meanwhile, in March 2015, Harnack filed a motion to modify previously entered injunction orders of the trial court. Harnack acknowledged Fanady's pending petition for leave to appeal, but asserted that because no stay had been entered, she was entitled to enforce the judgment of dissolution. Specifically, Harnack requested the trial court to direct CBOE Holdings to distribute 80,000 shares of CBOE stock to her as provided in the judgment, or alternatively 6,159 shares to satisfy her maintenance award. She reasoned that the appellate court remand only related to 40,000 shares held in escrow, and she was entitled to the remaining 80,000 shares. Israelov and Marme objected to Harnack's motion, noting that they also had claims for the remaining shares.

¶ 15    In May 2015, the trial court denied Harnack's motion, finding that "the third party issues have to get resolved before any release of any of these shares is ordered." The court further explained, "it would be *** detrimental to these third parties if these shares were released, and

they have rights and due process rights which, apparently, since I wasn't the trial court which, apparently, have not been addressed before this, I'm reluctant to release shares to Ms. Harnack."

¶ 16    Harnack filed the second appeal in this matter pursuant to Supreme Court Rule 307(a) (eff. Feb. 26, 2010), which allows for interlocutory appeals from orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." However, this court concluded that the circuit court lacked jurisdiction to consider Harnack's motion, since the mandate had not yet issued in the prior appeal. *Harnack*, 2016 IL App (1st) 151874-U, ¶ 22. We thus vacated the circuit court's order in a Rule 23 order filed March 31, 2016 (*id.*), and the proceedings continued in the trial court.

¶ 17    After extensive briefing regarding the proper distribution of the CBOE shares, the circuit court held a three-day trial on April 4, 5, and 6, 2017, during which the court heard testimony from Harnack, Fanady, Israelov, Marme, and Harnack's former counsel.

¶ 18    On July 11, 2017, the trial court entered an order, noting that the issue before the court was "the ownership of 120,000 shares of CBOE Holdings Inc. stock and the associated dividends" held by CBOE Holdings, which had subsequently changed its name to "Computershare." The court noted that there had

> "been great delay and upheaval caused mostly by the many machinations of Steve Fanady in his attempt to deceive his ex-wife and his former business partners. It was Mr. Fanady's antics that created the chaos in the pre-decree divorce case. It was Mr. Fanady who fabricated a judgment and forged a judge's stamp. It was Mr. Fanady who transferred an additional 120,000 shares of stock to locations which he now refuses to disclose."

¶ 19    The trial court then made substantial factual findings based on the trial evidence. In sum, the evidence showed that Fanady transferred shares of CBOE stock that were property of the partnership with Israelov to a personal account in Switzerland. While he was transferring the shares, he was purposely misleading Israelov, and later, ignoring Israelov's repeated communications. The court concluded that Israelov was "an innocent victim of Mr. Fanady's underhanded actions" and that he "should receive promptly 40,000 shares currently being held by Computershare."

¶ 20    The court also considered Marme's claim to 80,000 CBOE shares. The court rejected Harnack's argument that Marme's claim should be barred because "Marme colluded with Fanady to deprive her of her portion of the marital estate," finding those allegations were not sufficiently proven. Accordingly, the court awarded Marme the 80,000 shares of CBOE stock she sought.

¶ 21    In awarding the remaining 120,000 shares to Israelov and Marme, the court noted that Harnack's arguments were compelling as an equitable matter, but they failed legally. Fanady—and by extension, Harnack—had no claim to the remaining 120,000 shares, because Fanady had already transferred and received the shares to which he was entitled from the partnerships. The court found that Harnack "should not benefit from her husband's bad acts" or "from her own misunderstanding or misrepresentation as to the number of shares of CBOE Holdings which were in the marital estate," and she was required "to chase Mr. Fanady for her just share of the marital estate."

¶ 22    Accordingly, and as clarified in a July 28, 2017, order, the court ordered Computershare to immediately transfer 40,000 shares of CBOE stock and associated dividends to Israelov, and 80,000 shares of CBOE stock and associated dividends to Marme. Harnack's motion for reconsideration of that order was denied. The court further found as to both orders "pursuant to

Illinois Supreme Court Rule 304(a)" that there was "no just cause for delay of enforcement or appeal of the Court's July 11, 2017, order, as clarified on July 28, 2017." Harnack filed a timely notice of appeal from that order on September 20, 2017, and thereafter, an amended notice of appeal on September 21, 2017.

¶ 23    On appeal in *Harnack II*, this court noted that Harnack's appeal was comprised of claims against Fanady arising from the dismissal or denial of certain petitions for a rule to show cause, as well other claims against Israelov and Marme arising from the award of CBOE shares to those parties. As to Harnack's claims against Fanady, this court lacked jurisdiction to consider them because her appeal was not from a final order. Harnack had a pending attorney fee petition that had not been ruled on, and the trial court did not find that there was no just reason for delay of enforcement or appeal under Illinois Supreme Court Rule 304(a).

¶ 24    This court then went on to consider Harnack's claims against Israelov and Marme, for which the circuit court had made a Rule 304(a) finding, and over which this court had jurisdiction. This court affirmed the circuit court's order, concluding that the trial court's factual findings, including that Harnack "caused the trial court to enter the judgment for dissolution of marriage based on an inflated assessment of the marital estate," were not against the manifest weight of the evidence. Among other things, this court rejected Harnack's arguments that Israelov had violated the Uniform Partnership Act by restricting her rights to the remaining shares, and that Marme had colluded with Fanady to deprive Harnack of her portion of the marital estate. This court also rejected Harnack's argument that Marme's claims were barred by *res judicata* and collateral estoppel as a result of the judgment for dissolution, noting that Marme was not a party to the dissolution proceedings.

¶ 25    The case then continued in the circuit court. On December 9, 2019, Harnack filed a Petition to enforce the judgment for dissolution of marriage. Harnack explained that the judgment, which had been affirmed by the appellate court, required Fanady to transfer 120,000 shares of CBOE stock to Harnack. Harnack stated that Fanady had "delayed the enforcement of the [judgment for dissolution of marriage] by filing frivolous and fraudulent legal actions against" her and requested that the trial court "end [Fanady]'s delay tactics and enforce" the judgment. Harnack further requested, "in the event [Fanady] is no longer possessed of said shares," that he be required to "pay [Harnack] the value of said shares in an appropriate amount along with any interest, dividends, or other monetary benefits collected by [Fanady] while he was in possession of said stock."

¶ 26    On April 27, 2020, Fanady filed a motion to dismiss Harnack's petition for enforcement. Fanady argued that it was "impossible to award" Harnack the relief she sought because the shares she was awarded in the judgment "no longer exist[ ]" and because those shares were determined to "belong[ ] to others." Fanady further argued that the "law of the case" doctrine and "collateral estoppel" barred Harnack from "relitigating" the ownership of the CBOE stock that was awarded to Israelov and Marme. Fanady additionally maintained that the court could not grant Harnack's alternative request that he pay the value of the CBOE shares if those shares were no longer available, because doing so would be "improperly engrafting an additional obligation into" the judgment.

¶ 27    Harnack responded to Fanady's motion to dismiss on May 20, 2020. Harnack argued that Fanady failed to assert any proper basis for dismissal. Harnack pointed out that the interpleader action was a separate action, which did not extinguish or otherwise adjudicate Fanady's obligations to Harnack under the prior dissolution judgment. Instead, the issue in the interpleader action "was who had a legal right to certain specific shares that were being held by the interpleader in that

11

cause." That action did not bar Harnack's claims. Instead, Harnack had "a right to enforce" Fanady's obligations under the judgment, and it was Fanady who could not "continue to litigate the legitimacy of those claims." Harnack further asserted that the judgment awarded her 120,000 shares of CBOE stock, and provided a way for Harnack to receive what she was awarded, but the provisions were "separate and the former does not depend on the latter." Harnack claimed that she was "not seeking to modify the dissolution judgment, only enforce it," which the court had "indefinite jurisdiction" to do.

¶ 28    On June 19, 2020, the court held a hearing on Fanady's motion to dismiss. After hearing argument from both parties regarding the judgment, the court stated,

> "I've read the judgment in detail countless times, and I've lived with this case for years, as have most of you. I don't read the judgment—first, in Paragraph 10 of the Findings section of the judgment, it clearly delineates that there are 320,000 shares of CBOE stock, and then later in Paragraphs 12 and 13 and 19, those 320,000 shares, as I read the judgment, are distributed. I don't find that there are specific shares that are awarded to Ms. Harnack versus Mr. Fanady. As [counsel for Harnack] said, there aren't individually numbered shares that were delineated or set forth in the judgment. I don't think we need to complicate the issue here. There were 320,000 shares. 120,000 of those shares were to be transferred to Ms. Harnack."

¶ 29    The court then concluded that there were "sufficient elements pled in the *** petition [to enforce]" and denied Fanady's motion to dismiss. Fanady's motion to reconsider that order was denied on September 3, 2020.

¶ 30     On July 17, 2020, Fanady answered Harnack's petition for enforcement. Among other things, Fanady continued to argue that the judgment awarded her certain stock, but that it had since been "determined that stock belongs to others." Fanady also repeated his argument that Harnack was "ask[ing] the court for alternative relief, not awarded to her" in the judgment, by requesting a monetary amount if the shares were no longer available. Fanady further alleged several "affirmative defenses," including the "law of the case" doctrine, *res judicata*, and unclean hands.

¶ 31     On October 20, 2020, counsel for Fanady filed a motion to withdraw from his representation citing irreconcilable differences. That motion was granted on November 4, 2020. Thereafter, Fanady represented himself in the circuit court proceedings.

¶ 32     On November 11, 2020, Fanady, *pro se*, filed a motion for summary judgment. Fanady set out various portions of this court's 2019 decision, and argued that Harnack was not entitled to the relief she sought because Harnack "knowingly deceiv[ed] the trial court as to the size of the marital estate." Fanady asserted that "enforcement of the judgment granting her 120,000 shares of CBOE stock" would "violate the established law as stated in the doctrine of *** unclean hands."

¶ 33     On November 30, 2020, Harnack responded to Fanady's motion for summary judgment, contending that the motion was virtually identical to his 2014 Section 2-1401 motion in which he argued that the judgment for dissolution of marriage was " 'uneven and unfair' and based on a 'fundamental misunderstanding or misrepresentation' regarding the amount of CBOE Holdings stock he owned." That motion was denied, and the denial was affirmed on appeal in *Harnack I*. *In re Marriage of Harnack and Fanady*, 2014 IL App (1st) 121424. Harnack argued that Fanady's arguments "that the Judgment cannot be enforced because it is not fair are *res judicata barred ***. An enforceable Judgment is the law of the case and [Fanady] cannot continue to relitigate this theory."

13

¶ 34    On December 10, 2020, the court held a hearing on Fanady's motion for summary judgment and Harnack's petition to enforce. The hearing was conducted over Zoom, and Fanady appeared using only audio, insisting that he did not have a working camera. The court instructed Fanady throughout the proceedings to stop using the mute function on his audio. Additionally, several times throughout the hearing, both the court and counsel for Harnack commented that they were able to hear another voice with Fanady, coaching him as to his answers, and the court observed that he was "certainly talking to somebody." Fanady denied that anyone else was present.

¶ 35    Initially, the court denied Fanady's summary judgment motion, specifically finding that it had "no basis in law or fact." Proceeding to Harnack's petition to enforce, Harnack testified briefly to confirm that she had never received the CBOE stock that she was awarded in the judgment. Fanady, who continued to represent himself, also testified. The bulk of his direct testimony included reading from court documents, and attempting to enter those documents into evidence. The court denied Fanady's requests to enter those documents into evidence, repeatedly explaining that it was improper testimony, that the court could take judicial notice of the court file, and that Fanady was entitled to argue from those documents in his closing argument. Fanady, however, continued to read at length from the documents, insisting that the court "c[ould]n't tell [him] how to make [his] record" and that he was "putting on [his] case as [he] s[aw] fit."

¶ 36    After hearing argument from the parties, the court granted Harnack's petition to enforce, and ordered Fanady to transfer to Harnack 120,000 shares of CBOE Holdings, or the equivalent thereof, by December 18, 2020. The court entered a written order the next day, December 11, 2020, memorializing the above, and specifically ordering Fanady to transfer to Harnack "120,000 shares of CBOE Holdings and any other monetary benefits accruing to said shares including but not limited to interest and dividends from the date of the divorce judgment," or, if he no longer

14

possessed those shares, to "pay [Harnack] the value of said shares along with any interest, dividends, or other monetary benefits collected by [Fanady]" on or before December 18, 2020.

¶ 37    On December 17, 2020, Harnack requested the court enter a Rule 304(a) finding as to the December 11, 2020, written order.

¶ 38    Fanady failed to comply with the December 11, 2020, order by the December 18, 2020, deadline. On December 30, Harnack filed a petition for a rule to show cause for his failure to do so.

¶ 39    On January 6, 2021, the court entered an order granting Harnack's motion for a Rule 304(a) finding, explicitly finding as to the December 11, 2020, order that there was "no just reason for delaying either enforcement or appeal or both." The court set a hearing date on Harnack's petition for a rule to show cause, and granted Fanady time to file a response.

¶ 40    On January 8, 2021, Fanady filed a notice of appeal of the December 11, 2020, order.

¶ 41    In this court, Fanady, *pro se*, argues that the trial court erred in denying his motions for summary judgment and to dismiss, and ordering him to turn over 120,000 CBOE shares, or the value thereof, to Harnack.

¶ 42    Before analyzing Fanady's specific arguments on appeal, we address two fundamental fallacies upon which many of his appellate arguments are based. First, Fanady contends that the dissolution judgment did not award Harnack 120,000 CBOE shares generally from the parties' marital estate, but a very specific set of 120,000 shares that has since been awarded to Israelov and Marme. Fanady contends that, because Harnack was only entitled to those specific 120,000 shares, it is Harnack who must bear the full consequences of those shares being awarded to Israelov and Marme.

¶ 43    As the circuit court explained, the judgment awarded Harnack 120,000 shares of CBOE stock. It did not specify that she only was awarded certain stock, specifically identifying it by stock numbers or otherwise. Recital 10(B) of the 2011 judgment finds that the parties acquired "[t]he equivalent of 320,000 (Three Hundred Twenty Thousand) shares of Chicago Board of Options Exchange (CBOE) stock," which was marital property, with Fanady being the 100% owner of at least 280,000 of those shares. Recital 12 provides that the CBOE shares owned in Fanady's name, or the name of several of his partnerships, was marital property, and Harnack was awarded 140,000 shares of "said Chicago Board of Options Exchange stocks." Separately, the court ordered 40,000 shares escrowed pending the resolution of Israelov's claim.

¶ 44    To effectuate the court's award, particularly since Fanady had already secreted away much of the proceeds from the CBOE stock to Switzerland or otherwise undisclosed locations, the court ordered Harnack to receive the shares that she was awarded from an account that appeared to be accessible, instructing CBOE, BNY Mellon Bank, and Fidelity to transfer 120,000 shares to Harnack. Fanady was awarded the balance of the stock, and the two Swiss bank accounts where the proceeds appeared to have been transferred.

¶ 45    However, as became clear in later proceedings, Fanady had also been deceiving his business partners, and improperly transferring shares out of the partnerships. As a result, those business partners had claims to the shares contained in the account which initially appeared to be available to effectuate the court's award to Harnack. Fanady cannot escape his obligations to Harnack by swindling his business partners, ensuring that the assets awarded to Harnack under the judgment are unavailable.

¶ 46     A second assumption that underlies most of Fanady's appellate arguments is that in *Harnack II*, this court effectively abandoned *Harnack I*, vindicating Fanady and his arguments that the dissolution judgment was unfair. Fanady is incorrect.

¶ 47     Specifically, Fanady blames Harnack for "caus[ing] the court to enter an order" that was "irretrievably flawed," that "overstat[ed] the number of shares in the marital estate," and that "attempted to transfer to herself millions of dollars of stock she knew belonged to others." Fanady maintains that in the judgment, the circuit court awarded Harnack 120,000 CBOE shares, intending to split the CBOE shares "50/50," when in reality, there were only 120,000 shares in the entire marital estate. Fanady argues that by granting Harnack 120,000 shares of CBOE stock, the circuit court "gave Harnack a profit of 60,000 shares of CBOE stock worth millions of dollars which she 'earned' by knowingly deceiving the trial court that heard the default prove up as to the size of the marital estate."

¶ 48     This court has explained on multiple occasions that the consolidation of the dissolution proceeding, Israelov's lawsuit, and the interpleader action "did not merge the *** causes into a single suit, change the rights of the parties to each suit or make the parties in one suit parties in the other suit." *In re Marriage of Harnack & Fanady*, 2014 IL App (1st) 121424, ¶ 42.

¶ 49     The portion of the *Harnack II* ruling upon which Fanady relies is relative to Harnack and Fanady's former partners, addressing who was entitled to the 120,000 shares of stock held by CBOE Holdings and its stock transfer agent. This court's order in *Harnack II* as to the interpleader action does not affect the judgment between Harnack and Fanady in the dissolution action, which was affirmed in 2014. Fanady's attempts to relitigate the judgment, and his continued arguments that it was unfair or based on an overstated marital estate, are not persuasive. Those arguments were considered and rejected more than seven years ago, in *Harnack I*. Our 2014 opinion in

*Harnack I* was not an invitation for Fanady to make a second attempt to obtain evidence that was previously lacking, or to otherwise support his attempt to vacate or invalidate the judgment for dissolution. See *In re Marriage of Harnack & Fanady*, 2014 IL App (1st) 121424, ¶ 67 ("[W]e are not vacating the judgment for dissolution of marriage and are not inviting further litigation regarding Fanady's attempts to vacate the judgment.").

¶ 50    As this court made explicitly clear in *Harnack I*:

> "any alleged errors in the judgment or inequalities in the distribution of assets are solely due to Fanady's failure to participate in the dissolution proceedings. Any errors or injustices in the judgment for dissolution of marriage of which Fanady now complains would not have occurred absent his abandonment of the litigation. Fanady chose not to participate in the litigation. He must now live with the consequences of that decision." *Id.*, ¶ 47.

¶ 51    Turning to Fanady's appellate arguments, Fanady first asserts that the circuit court erred by "engraft[ing] new provisions" into the judgment and by ordering him to "take actions he was not required to do" by the judgment. Fanady defines this as a "jurisdictional issue," contending that the circuit court "lacked jurisdiction to modify or engraft new provisions to the judgment."

¶ 52    In support of his engraftment argument, Fanady relies primarily on *In re Marriage of Benson*, 2015 IL App (4th) 140682, but that case provides no support for his position. In *Benson*, the dissolution judgment required the former husband, a firefighter, to pay his ex-wife a portion of his "retirement plan." *Id.* ¶ 5. Nine years later, the former husband was injured on the job and obtained a disability pension. He refused to give his former wife a portion of those benefits, claiming they were disability, not "retirement" benefits. Following an evidentiary hearing, the trial

court found that the former husband's disability benefits were in the nature of a disability pension and, as a result, the former wife was entitled to a portion of those benefits.

¶ 53    On appeal, the appellate court set out the rule that a court may not engraft new obligations into, or modify, a dissolution judgment. However, it rejected the former husband's argument that the trial court was doing so, concluding that the court "was not creating a new property right *** but rather enforcing a preexisting right under the [original dissolution] judgment." The court noted that the husband was old enough to obtain a retirement pension, and "[w]hile [the husband's] payments are considered disability benefits, they are essentially retirement benefits. [The husband's] disability benefits do not serve as income replacement, but as a substitute for his retirement pension." It thus concluded that the former wife was entitled to a share of his benefit payments. Similarly here, the trial court's order does not engraft new obligations into, or modify, the dissolution judgment, but rather enforces a preexisting right under the original judgment.

¶ 54    Fanady next argues that the doctrines of law-of-the-case and *res judicata* prevent Harnack from obtaining the relief she is seeking, because this court "ruled that Harnack had no claim of ownership to the 120,000 shares of CBOE stock held by" CBOE, BNY Mellon Bank and Fidelity, in the interpleader action.

¶ 55    The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case. *Village of Ringwood v. Foster,* 2013 IL App (2d) 111221, ¶ 33 (citing *Krautsack v. Anderson,* 223 Ill. 2d 541, 552 (2006)). As explained above, although the actions were consolidated, the interpleader action is not "the same case" as the dissolution action, and accordingly, the law-of-the-case doctrine does not apply.

¶ 56    The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to

them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. *Res judicata* applies when all three of the following elements exist: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001).

¶ 57    As this court explained above, Fanady's arguments on this point are based on false premises—that Harnack is only entitled to the specific 120,000 shares awarded to Israelov and Marme, and that *Harnack II* somehow invalidated the dissolution judgment that was affirmed in *Harnack I*. Having rejected both of those conclusions above, we also conclude that there is no identity of the cause of action, and that *res judicata* does not bar Harnack from enforcing the dissolution judgment.

¶ 58    Fanady next argues that the court erred in refusing to "apply the doctrines of *In Pari Delicto* and Unclean Hands" to bar Harnack's claim. Fanady generally equates the two doctrines, claiming they both prevent Harnack from profiting for her knowing misrepresentation as to the number of shares of CBOE stock in the marital estate. We note, however, that these two doctrines are distinct, but neither provides support for Fanady's attempts to avoid his obligations under the dissolution judgment.

¶ 59    First, *in pari delicto* is a principle applied where a person seeks enforcement of a contract which is void because it is illegal or against public policy. *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 616 (1989), citing *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1987), 158 Ill. App. 3d 562, 565; *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 354. This doctrine has no applicability here, where Harnack is seeking enforcement of the judgment for dissolution, and not a void contract.

¶ 60    Fanady's invocation of the doctrine of "unclean hands" fares no better. That doctrine is grounded in the principle that "he who seeks equity must do equity," and a party should not be allowed to profit from its own wrongdoing. *In re Estate of Opalinska*, 2015 IL App (1st) 143407, ¶ 32; *Gambino v. Boulevard Mortgage Corp.,* 398 Ill. App. 3d 21, 60 (2009). The application of the doctrine is left to the sound discretion of the trial court, and this court will not disturb the trial court's determination on appeal absent an abuse of that discretion. *Long,* 196 Ill. App. 3d at 219, citing *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.,* 128 Ill. App. 3d 763, 768 (1984). An abuse of discretion occurs when a ruling is arbitrary or unreasonable and no reasonable person would reach the same conclusion. *McGill v. Garza*, 378 Ill. App. 3d 73, 75 (2007).

¶ 61    The fact that Harnack is not seeking equitable relief, but rather the enforcement of legal rights under the dissolution judgment, is fatal to Fanady's argument. "[T]he unclean hands doctrine bars only equitable remedies and does not affect legal rights." *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006) (citing *American National Bank & Trust Co. of Chicago v. Levy*, 83 Ill. App. 3d 933, 936 (1980); 30A C.J.S. Equity § 111, at 324 (1992) (doctrine of unclean hands "does not deny legal rights")) (emphasis added). Accordingly, we find no abuse of discretion in the trial court's refusal to apply the doctrine to Harnack, where the doctrine has no applicability here.

¶ 62    Finally, Fanady asserts that the trial court improperly excluded certain exhibits during the December 10, 2020, hearing. Fanady does not provide any explanation regarding why those exhibits were admissible, instead complaining only of the manner in which the trial court excluded the exhibits, claiming that the "tenor of the proceedings *** convey[ed] an atmosphere of arrogance, superiority, and disdain" for him as a *pro se* litigant, and that the trial court did not display "the type of patient judicial demeanor" that was required. Fanady has failed to set forth any cogent argument or legal support as to why the exhibits should have been admitted into

21

evidence. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80 ("This court is not a depository in which the burden of argument and research may be dumped."). A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authorities cited and a cohesive legal argument presented. *In re Marriage of Solano*, 2019 IL App (2d) 180011, ¶ 70. "The failure to elaborate on an argument, cite persuasive authority, or present a well-reasoned theory *** results in forfeiture of the argument." *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54. Accordingly, we find that Fanady has forfeited review of the exclusion of his proffered exhibits. Forfeiture aside, the court informed Fanady that, while it was denying his requests to enter court documents into evidence, the court was nonetheless able to take judicial notice of those documents. Accordingly, the exhibits that Fanady sought to admit were actually considered by the court.

¶ 63    To the extent that Fanady's argument on this issue can be read to allege any improper behavior or bias on the part of the circuit court, we would reject that claim as well. "A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). The party challenging a judge's impartiality must present specific "evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* Fanady's vague allegations do not meet this standard. To the contrary, our review of the proceedings reveals that the trial court was exceptionally patient with Fanady and his repeated disregard of the court's instructions.

¶ 64    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 65    Affirmed.